The Wabash and Western Railway Company v. Morgan.

Filed Oct. 13, 1892.

---

No. 15,392.

# THE WABASH AND WESTERN RAILWAY COMPANY v. MORGAN.

RAILROAD.—*Personal Injuries.*—*Defective Engine.*—*Sufficiency of Complaint.*— In an action against a railroad company by an employee to recover damages for injuries alleged to have been sustained while coupling cars it was averred that the engine used was defective, and could not be handled or controlled so as to be safe for those engaged in coupling and uncoupling the cars which were propelled by it, such difficulty in handling and managing being in part caused by the leaking of the throttle, and in part by defects unknown to plaintiff, and which he is unable to more particularly describe or specify, and that said defects combined were such that when said engine was reversed and caused to move backward it would often give a sudden spring or start, and 'would move with a sudden rush or spring. It was also alleged that the defendant knowingly employed an incompetent engineer to operate said engine. It was further alleged that the defendant had long known of the dangerous and defective condition of the engine.

*Held,* that a motion to make the complaint more specific in that the plaintiff should be required to state the length of time the engine had been defective, and the length of time the engineer had been negligent, the exact defects in the engine, the particulars which constituted the alleged incompetency of the engineer, etc., was properly overruled.

SAME.—*Interrogatory to Jury.*—*Notice of Defect.*—It was proper for the plaintiff to submit an interrogatory to the jury, asking if the foreman of the shop of the defendant, at the place where the accident occurred, was

The Wabash and Western Railway Company *v.* Morgan.

not notified before the accident by an engineer of the defective engine, that it was in an unsafe and unfit condition, and liable to be wrecked unless it was taken into the shops and repaired.

SAME.—*Measure of Damages.— What Considered in Estimating.*—In estimating the damages in such an action, it was proper to inform the jury that they should be ascertained on the basis of compensation, and that in making such estimate the jury should take into consideration the plaintiff's physical and mental suffering, the character of the injury, whether temporary or permanent, and the reduction, if any, in plaintiff's ability to earn money caused by the injury.

SAME.—*Master and Servant.—Safe Machinery.—Master's Obligation to Furnish.*—While the master is not bound to use the highest care, nor to use the latest or most improved machinery, he is bound to use care, skill, and prudence in selecting and maintaining machinery and appliances, and for a negligent omission of this duty he is answerable to a servant injured by the omission.

SAME.—*Instruction to Jury.—Notice of Defect.—How May be Inferred.*—An instruction to the jury as to notice on the part of the defendant of the defective engine, that they might find such notice to be proved, if it might be rightfully and reasonably inferred from the evidence given in the cause, although there might be no direct testimony as to such notice, was proper, in view of the averment in the complaint that the defendant had long known of the dangerous and defective condition of the engine.

SAME.—*Instruction to Jury.—Incompetence of Engineer.*—An instruction was properly refused which made the plaintiff's right of recovery dependent upon the incompetence of the engineer, and the defendant's knowledge of such incompetence, as under the allegations of his complaint he might have recovered by reason of the defects in the engine.

SAME.—*Instruction to Jury.—Failure to Use Safety Coupler.— When Immaterial.*—It was not error to refuse to instruct the jury that the plaintiff could not recover by reason of the fact that he was trying to make the coupling without the use of a safety coupler, which he was required to use by the rules of the company, where there was no evidence that the injury was caused or contributed to on account of a failure to use a safety coupler.

SAME.—*Instruction to Jury.—Defining Duties of Yard-Master*—An instruction was properly refused which stated, as a matter of law, what were the duties of a yard-master, in which capacity the plaintiff was acting at the time of the accident, and that his position was more favorable than that of the master to know the fitness of the engine and engineer.

SAME —*Instruction to Jury.—Latent Defects.—Duty of Employer and Employee Concerning.*—It was not error to instruct the jury that the plaintiff's duty was to furnish appliances free from latent defects, and that the duty to search for defects did not rest upon the employee.

SAME.—*Instruction to Jury.— Opportunity of Plaintiff to Know.—Fitness of Engine.*—It was not error to refuse to instruct the jury that if the plaintiff had worked a certain number of days as yard-master with the engine claimed to be defective, and coupled and uncoupled cars during that time, and saw others do so, and did not object to continuing work, then, as matter of law, he assumed the risk of injury. The instruction took from the jury the right to pass upon the opportunities the plaintiff had to ascertain the fitness of the engine, and stated, as a matter of law, what time the plaintiff would have to work with the engine to be conclusively presumed to have known of any defects existing in the engine.

SAME.—*Evidence.*—It was proper for the plaintiff to testify what his duties were, if any, as to superintending or looking after the fitness or qualification of the engineer or the fitness of the engine. It was also proper to interrogate a witness as to other defects than the defect in the throttle valve, the complaint having alleged that there were other defects unknown to the plaintiff, but of which the defendant had knowledge. It was not proper, however, to ask an engineer, who was called upon to testify: " If the engine and engineer worked so as to be satisfactory to the yard-master, is there any occasion for complaint," or to ask a witness a question which necessitated a comparison of engines.

PRACTICE.—*Overruling Demurrer to Original Complaint. — Effect of Filing Amended Complaint.*—Where a demurrer was filed to a complaint and overruled, and exceptions were reserved, but afterwards, on leave of court, the complaint was amended, the amended complaint superseded the original complaint, and there is no longer any question in the record as to the sufficiency of the complaint at the time the demurrer was ruled upon.

SAME.—*Examination of Party Out of Court.—Scope of Examination.*—Under sections 509 and 510, R. S. 1881, a party may be examined, as a witness, concerning any matter stated in the pleading, but he can not be compelled to testify as to the names of his witnesses and to state by whom he expects to prove this fact or the other.

SAME.—*Amendment of Complaint.— When and How May be Made.*—The court has the right to allow a party to amend his complaint during the trial and after the evidence is closed, without requiring a showing supported by affidavit.

From the De Kalb Circuit Court.

*C. B. Stuart, T. A. Stuart* and *W. B. Stuart,* for appellant.

*R. W. McBride, F. S. Blettner* and *W. L. Penfield,* for appellee.

OLDS, J.—The appellee brought this action against the appellant for damages resulting from an injury alleged to have been caused by the negligence of the appellant. The appellee was acting in the capacity of yardmaster on appellant's railroad at Butler, Ind., and the injury is alleged to have occurred by reason of a defective engine.

It is alleged in the complaint that appellee's duty was the making up of trains of cars, coupling and uncoupling cars; that the engine provided for and used in doing said work was, as appellant and her officers well knew, defective, unsafe and dangerous, and, as appellant well knew, had been thus defective, dangerous and unsafe for a long time prior to the injury; that the defect consisted in this: that the throttle of said engine leaked, and said engine was by reason thereof, and by reason of other defects which appellee is unable to specify, hard to handle, manage and control, and could not be so handled, managed and controlled as to be safe for those engaged in coupling and uncoupling the cars which were propelled by it; such difficulty in managing, handling and controlling being in part caused by the leaking of said throttle and in part by defects unknown to appellee, and which he is unable to more particularly describe or specify, but that said defects combined were such that when said engine was reversed and caused to move backward it would often give a sudden spring or start, and instead of moving backward steadily and with regular motion would move with a sudden rush or spring, and that appellant had long known of said defective and dangerous condition of said engine; that appellant employed as engineer to use, run, manage and control said engine, one John Duerk, who was, as appellant well knew, and had long known, incompetent, unskilful, careless, and unfit to be entrusted with such employment, appellant's agent, whose duty it was to employ such engineer, having long before been informed of the incompetency, unskillfulness, carelessness and unfitness

of said Duerk, but, notwithstanding such notice, continued to employ him and continue him in such employment. It is then alleged that appellee had no knowledge of the defective condition of the engine or of the unskilfulness and unfit- ness of the engineer.

The manner of the injury is then alleged, showing that it occurred while attempting to make a coupling of the cars; that he signalled the engineer to run back, and that just as the cars were coming together, and as he was about to make the coupling, the engine gave a sudden start or spring driving the cars together with great and unusual force and speed, so that before the appellee could withdraw his hand and step from between the cars he was struck by the one nearest the engine and thrown off his balance and his left hand thrown between the dead-woods and was so crushed and mangled that it became necessary to amputate the same, and it was accordingly amputated and lost to the appellee; that the in- jury was caused solely on account of the defective condition of the engine and incompetency and unskilfulness of the engineer, and appellee was without fault contributing to the injury.

Numerous errors are assigned. The first error complained of is that the court erred in overruling appellant's motion to make the complaint more specific, in that the appellee should be required to state the length of time the engine had been defective, and the length of time the engineer had been negligent as alleged; the exact defects in the engine; the particulars which constituted the alleged incompetency, unskilfulness, carelessness and negligence of the engineer, and the extent and nature of the injury.

The complaint alleges that the throttle of the engine leaked, and that there were other defects which were un- known to appellee, and which he was unable to specify, but that the appellant had long known of such defects.

The appellee's employment was not such as to require him to possess any knowledge as to the condition of the engine;

his business was the making up of trains and coupling of cars, and he had no supervision over the engine, and the keeping of the same in repair. He could only have such knowledge of defects in the engine as he might, as a non-expert, learn by observation and gain from others.

He alleges that the throttle leaked and that there were other defects known to appellant, and which were unknown to him, and which he was unable to specify. The complaint was sufficiently specific in this particular.

As regards the length of time the engine was out of repair and the engineer had been negligent, it is alleged that the defects had been long known to the appellant, and that it had long before been informed of the incompetency, unskilfulness and carelessness of the engineer, and had continued him in its employ notwithstanding such notice.

The exact time the company knew of such defects and incompetency and carelessness of the engineer is not material, and the complaint was sufficient, and the allegations as to the engineer's carelessness and incompetency was also sufficient.

The negligence charged against the appellants in this case is the failure to keep in repair the engine used for making up trains, and permitting it to become and remain out of repair after having knowledge of its defective condition, and employing and retaining in its service an incompetent, careless and negligent engineer to operate such engine. Such negligence and failure of duty are alleged in plain, specific terms in the complaint. As we have said, the exact length of time that appellant had such knowledge is not material, it being alleged that the company did have knowledge. The particular defects in the engine should have been stated, if known to the appellee, but the necessity of specifically setting out all of the defects is avoided by the averments that there were other defects which were known to the appellant, but were not known to the appellee. Such being the fact the

appellee ought not to be required to make the complaint more specific in this particular.     He shows his inability to do so.

There was no error in overruling the motion to make the complaint more specific.

The next alleged error complained of and discussed is the overruling of a demurrer to the complaint.     There is no such question before us for consideration.     There was a demurrer filed to the complaint and overruled and exceptions reserved, but afterwards, on leave of court, the complaint was amended.     The amended complaint superseded the original complaint, to which a demurrer was addressed, and there is no longer any question in the record as to the sufficiency of the complaint at the time the demurrer was ruled upon. The next question relates to the ruling of the court in refusing the appellee to answer certain questions when being examined under the statute authorizing the examination of parties.     Sections 509, 510, R. S. 1881.     On such examination appellant's counsel asked the appellee the following questions :

123.  Who has told you that the engine was out of repair ?

125.  Now, who told you all the above alleged defects of the engine ?

129.  Now, in regard to the engineer Duerk, who told you that he was incompetent ?

The appellee refused to answer the questions, and the appellant appealed to the court and asked that he be ordered to answer them, and the court refused to require him to answer such questions.     The statute, section 509, *supra*, provides that a party may be examined as a witness concerning any matter stated in the pleading.     It is evident, we think, that the purpose of the statute is that a party may be compelled to testify as to all matters within his own knowledge stated in the pleading.     If he has received an injury for which he has sued, he may be compelled to disclose all he knows about it, how it occurred, and in this case all he knows about how the injury occurred, and as to the defective con-

dition of the engine and incompetency of the engineer, but he can not be compelled to testify as to the names of his witnesses, and to state by whom he expects to prove this fact or the others by. It was not the purpose of the statute to make a party disclose his evidence by which he intends to make his case any further than his own knowledge of the facts stated in the pleading goes.

Some of these questions relate to facts stated in the pleading. The first asked him the name of the person who told him the engine was out of repair. The others are of the same character. They do not concern any matter alleged in the pleading. The right existed to examine the appellee fully as to the defect in the engine, which is the fact alleged, but who he talked with and who told him about the defects is not a matter alleged in the pleading.

There was no error in the ruling of the court.

The next alleged error is the ruling of the court in permitting appellee to amend his complaint during the trial and after the evidence was closed. This was a matter within the discretion of the court, and there is no abuse of discretion shown.

It is contended that such an amendment could only be made at the time it was done on proper showing supported by affidavit. The court had the right to allow it without such showing. *Chicago, etc., R. W. Co.* v. *Jones,* 103 Ind. 386 ; *Meyer* v. *State, ex rel.,* 125 Ind. 335 ; *Chicago, etc., R. W. Co.* v. *Hunter,* 128 Ind. 213.

Appellant contends that the court erred in overruling its motion to strike out certain interrogatories propounded to the jury by the appellee.

The discussion of counsel relates solely to interrogatory numbered twenty-five. This interrogatory was clearly proper. It asks if Mudd, the foreman of the shops of appellant at Butler, was not notified in November, 1888, by Crider, an engineer, of the defective engine, that the engine was in an

unsafe and unfit condition, and liable to be wrecked unless it was taken into the shops and repaired.

We next come to the instructions given and refused.

Counsel first contend that instructions numbered eleven, given by the court, and numbered twenty-six, given at the request of the appellee, are erroneous. They both relate to the question of the measure of damages. These instructions are substantially the same. We do not deem it necessary to set them out. We see no objection to the measure of damages stated in either instruction. They state that the damages shall be ascertained on the basis of compensation, and be such as will fairly compensate him for the injuries sustained; that in making such estimate the jury should take into consideration appellee's physical and mental suffering if any were caused by and arising out of the injury, the character of the injury, whether temporary or permanent, and great reduction, if any, in plaintiff's ability to earn money caused by the injury, and that their verdict should be for such sum as will fairly compensate appellee for all injury thus sustained.

There was no erroneous statement of the rule governing the assessment of damages contained in either of the instructions.

Objection is made to the instructions given defining the master's duty in regard to furnishing safe machinery and the keeping of it in repair. It is contended that by the language used in the instructions, and by the oft repeating of it, the jury were given to understand that the duty of the master went to the extent of requiring him to absolutely warrant the machinery, and that it must be free from latent defects. We have carefully read and considered the instructions, and we do not think they will bear the construction placed upon them by counsel for the appellant.

The court in the ninth instruction tells the jury that the master is not bound to use the highest care, nor to use the latest or most improved machinery, but he is bound to use

care, skill and prudence in selecting and maintaining machinery and appliances, and for a negligent omission of this duty he is answerable to a servant injured by the omission. The master should take notice of the liability of the parts of machinery to wear out and become defective, so the duty of the master to provide safe machinery and appliances is a continuing one. He must supervise, examine and test his machinery as often as custom and experience requires.

At the request of the appellant the jury was fully instructed as to the relationship of the master and servant, and as to the duty of the master in the employment of servants, and the risks of a fellow-servant, the difference in the obligations of a railroad company to a passenger and to an employee, and in the 16th instruction the jury are told that " the law does not hold the master as an insurer of the safety or sufficiency of his machinery. His duty is fully discharged when he has used ordinary care in furnishing machinery and providing facilities and men for the keeping of the same in repair." Taking the instructions as a whole, we think they fairly state the law.

The instructions are entirely too long, and contain repetitions in some instances, but the instructions favorable to the appellant, as well as those favorable to the appellee, are lengthy and present almost every conceivable legal principle that would be of any benefit to the appellant, so that we think no harm was done by the numerous instructions, and in some instances repetitions of legal principles favorable to appellee given by the court on its own motion and at the request of the appellee.

The third instruction relates to notice on the part of the appellant of the defective engine, and by it the jury are told that they " may find such notice to be proved if you think it may be rightfully and reasonably inferred from the evidence given in the case, although there may be no direct testimony as to such notice."

There was no error in giving this instruction. Facts may

have been proven that would have shown that the appellant or its proper officers could not have avoided knowing of such defect, though no actual or formal notice had been given them. The charge in the complaint is that "appellant has long known of said defective and dangerous condition of said engine." This instruction was proper in view of the averments of the complaint.

Special objection is made to the 14th instruction in relation to the duty of the master and servant to be on the alert to ascertain defects and avoid danger. This instruction is in accordance with the law as held in the case of *Louisville, etc., R. W. Co.* v. *Buck,* 116 Ind. 566.

It is next urged that the court erred in refusing instructions requested by the appellant. The second instruction was refused. It is an instruction to the effect that there was a failure of proof to show that the engineer was unskilful, incompetent and negligent, and that the appellant had knowledge of his unfitness a sufficient length of time prior to the accident to have provided against it, and therefore the jury should find for the appellant. This instruction was properly refused under the averments of the complaint. The appellee might have recovered by reason of the defects in the engine. The third was an instruction to find for the appellant for the reason that there was no testimony showing the engineer incompetent. This was also properly refused. The seventh instruction, that the appellee could not recover by reason of the fact that he was trying to make the coupling without the use of a safety coupler, when the rules of the company required him to use one, was properly refused, there being no evidence that the injury was caused or contributed to on account of a failure to use a safety coupler. It is not alleged that the injury occurred while having his hands engaged in making the coupling, but the car struck him, causing him to throw his hand between the deadwoods. His hand was not between the deadwoods when injured by reason of attempting to make a

The Wabash and Western Railway Company v. Morgan.

coupling, but on account of his being struck by the car, causing him to put his hand between the deadwoods when it was injured.

The appellant insists that instruction eighteen, requested by it, ought to have been given. This instruction states, as a matter of law, what the duties of the yardmaster, in which appellee was acting, are, and that his position is more favorable than that of the master to know the fitness of the engine and engineer. The instruction was erroneous, and the court did right in refusing to give it to the jury. The court also refused to give instruction twenty-five. This instruction told the jury that if appellee had worked a certain number of days as yardmaster with the engine claimed to be defective, and coupled and uncoupled cars during that time, and saw others do so, and did not object to continuing work, that in such event they were told, as a matter of law, that the appellee had reasonable opportunities, by the exercise of ordinary care, to have known whether the engineer was competent or the engine fit for the work, and by his continuing to work without protest or objection he assumed the risk of injury by reason of the unfitness of either engineer or of the engine, and the defendant is not liable in this action.

This instruction was erroneous. It took from the jury the right to pass upon the opportunities the appellee had to ascertain the fitness of the engine, and was saying, as a matter of law, what time the appellee would have to work with the engine to be conclusively presumed to have known of any defects existing in the engine. It was for the jury to say whether or not the appellee had such opportunities to judge of the sufficiency of the engine as to be conclusively presumed to have such knowledge and assume the risk. There was no error in refusing this instruction.

Appellant moved the court for judgment in its favor on the answers to interrogatories, which motion was overruled.

There were a large number of interrogatories submitted

and answered by the jury. Most of them support the general verdict, and there is no such inconsistency with the general verdict that they should prevail over the verdict and to entitle the appellant to a judgment; and the motion for judgment on the interrogatories was properly overruled. Appellant also moved for a *venire de novo.* No reason is given why this motion should have been sustained, except to say that the verdict of the jury is so ambiguous, defective and uncertain that no judgment can be rendered upon it. Our attention is not called to any defects in the verdict.

Appellant moved in arrest of judgment. This presents a question as to the sufficiency of the complaint. We deem it unnecessary to discuss at any further length the sufficiency of the complaint. The complaint is clearly good to withstand a motion in arrest, indeed we regard it sufficient on demurrer. We have not set it out in full, as no good would be accomplished by doing so.

The next question arises on the motion for a new trial, and relates to the sufficiency of the evidence to sustain the verdict. No good can be accomplished by setting out and discussing the sufficiency of the evidence. We can not weigh the evidence. It is sufficient if there is evidence from which the jury may have reasonably found as they did, and we think the evidence in this case fairly supports the verdict. The injury is clearly shown, and that the engine was defective and known to be defective by the appellant and neglect to repair is shown, and from which the jury may have found that the injury was the result of the defective engine, and that the appellee had no knowledge of the defective engine, and that he was without fault contributing to the injury.

When the appellee was testifying as a witness in his own behalf he was asked: "Was it any part of your duty to superintend or look after the fitness or qualifications of the engineer?" And a like question was asked regarding the engine, to which the appellant objected, and the objection was overruled and exceptions reserved. These questions

were entirely proper. It is said that the duties of yardmaster are prescribed by the company. That may be true, and yet the questions be proper. It was proper to show what his duties were. Another witness was asked a like question.

A witness was asked concerning other defects than the defect in the throttle valve, and it is insisted that this was error, for the reason that no other defect was specifically alleged, and that appellant moved to make the complaint more specific in this respect, that the appellant was in court to meet the charge of a defective throttle valve. The complaint avers that there were other defects in the engine of which appellant had knowledge, but which defects were unknown to appellee. The defects being unknown to appellee, he could not specifically name and describe them, but the averments in the complaint entitled him to make proof of other defects if any existed. If he were injured by reason of defects unknown to him and known to the appellant, he could not be prevented from recovering on account of his want of knowledge and inability to specify and describe such defects.

Appellant then moved to strike out all evidence relating to any defects except the throttle valve, which was overruled. What we have said disposes of this question. The ruling was correct.

Appellant asked an engineer, who was testifying as a witness, " If the engine and engineer worked so as to be satisfactory to the yardmaster, is there any occasion for complaint? " and he answered, " No, sir."

The appellee moved to strike out the answer, and the court sustained the motion, and this ruling is assailed as error. This ruling was clearly right. The question and answer had no possible relevancy or bearing on the issues in the case.

A similar question was propounded to another witness, and the court held it incompetent. Another witness was asked which was the safer engine to use, a road engine or a switch engine, and the court held it incompetent. A comparison

of engines was incompetent for any purpose, and the comparison sought to be made was not even with the defective engine in use at the time the appellee was injured. On cross-examination of one Ulerich an objection to a question was sustained for the reason that it was not cross-examination. In this there was no available error.

Some objections are made to the ruling of the court on questions propounded to appellee when testifying as a witness. We have examined them, and there is no error in the ruling.

There is no available error in the record.

Judgment affirmed, with costs.

McBRIDE, J., took no part in this decision.

Filed June 16, 1892.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—In the brief of appellant's counsel on the petition for a rehearing, it is argued with ability and earnestness that this court erred in not reversing the judgment because of the error of the trial court in instructing the jury as to the degree of care required of an employer in providing his employees with safe appliances.

We fully agree with counsel that an employer is not bound to exercise extraordinary care to provide safe appliances. The care required of him is ordinary care, but the dangers of the service of which the employer has knowledge, or of which he is bound to take notice, are always to be considered in determining what constitutes ordinary care. There is no exact test to which cases can be indiscriminately subjected, nor is there any rigid standard by which all cases can be measured. What would be ordinary care in one class of cases might be far otherwise in other and different classes.

The fourteenth instruction, against which the attack is particularly directed, contains some statements which can

not, if considered apart from other instructions, be deemed accurate. The instruction reads thus : " Railroad employees are presumed to understand the nature and hazard of the employment when they engage in the service, and they assume all ordinary risks and obvious perils incident thereto. Such risks are presumably within the employee's contract of service. This does not mean, however, that the latter may not repose confidence in the prudence and caution of the employer, and rest on the presumption that he has also discharged his duty by supplying machinery free from latent defects which expose the employee to extraordinary and hidden perils. While the employer may expect that an employee will be vigilant to observe, and that he will be on the alert to avoid all known and obvious perils, even though they may arise from defective tools and machinery, yet the latter is not bound to search for defects or inspect the appliances furnished him to see whether or not there are latent imperfections in and about them which render their use more hazardous. These are duties of the master, and unless the defects are such as to be obvious to any one giving attention to the duties of the occasion the employee has a right to assume that the employer had performed his duty in respect to implements and machinery furnished."

An analysis of this instruction shows that it contains general statements that are unquestionably correct, and these statements give tone and effect to the specific instruction when considered, as it must be, in connection with the series of instructions of which it forms a part. It is true, in a general sense, that a duty rests upon the employer " to see whether there are latent defects " in the appliances with which he requires the employee to make use of in the line of his service. The employer is bound to make reasonable inspection of the appliances furnished the employees to discover latent defects, and a neglect to make such an inspection is a culpable breach of duty. *Northern Pacific R. R. Co.* v. *Herbert*, 116 U. S. 642 ; *Matchett* v. *Cincinnati, etc., R.*

*W. Co., ante,* p. 334; *Ohio, etc., R. W. Co.* v. *Pearcy,* 128 Ind. 197; *Cincinnati, etc., R. R. Co.* v. *McMullen,* 117 Ind. 439. This duty to inspect implies, of course, that the employer will not subject the employee to concealed defects which an inspection conducted with ordinary care would have revealed. Obvious defects, open to ordinary careful observation, are perils of the service, but latent defects, or defects not discoverable by the exercise of reasonable care, are not perils incident to the service, and hence are not assumed by the employee. *Rogers* v. *Leyden,* 127 Ind. 50, and cases cited; *Ohio, etc., R. W. Co.* v. *Pearcy, supra; Matchett* v. *Cincinnati, etc., R. W. Co., supra.* It was, therefore, not error to direct the jury that the employer's duty was to furnish appliances free from latent defects, nor was it error to direct them that the duty to search for such defects did not rest upon the employee. To affirm that such a duty rests upon the employee would, it is evident, require the employee to perform the duty of inspection, and to affirm this would involve a denial of the rule that the duty of inspection rests upon the employer. The inaccuracy in the instruction, in so far as concerns the point under immediate mention, is in failing to properly guard the statement of the employer's duty by adding to the statement that he was bound to exercise only ordinary care, or words of similar import.

If an employee knows, or should know by the exercise of ordinary care, of defects adding to the perils of his service, he can not, as a general rule, recover for injuries attributable to such defects, hence it is correctly held that he must aver that the defects were unknown to him. *Lake Shore, etc., R. W. Co.* v. *Stupak,* 108 Ind. 1; *Indiana, etc., R. W. Co.* v. *Dailey,* 110 Ind. 75; *Louisville, etc., R. W. Co.* v. *Sandford,* 117 Ind. 265; *Brazil, etc., Coal Co.* v. *Young,* 117 Ind. 520; *Louisville, etc., R. W. Co.* v. *Corps,* 124 Ind. 427; *Matchett* v. *Cincinnati, etc., R. W. Co., supra; Philadelphia, etc., R. R. Co.* v. *Hughes,* 119 Pa. St. 301; *Wilson* v. *Winona, etc.,*

*R. R. Co.*, 37 Minn. 326 ; *Gaffney* v. *New York, etc., R. R. Co.*, 15 R. I. 456.

But where the defect is hidden, this established rule can not fully apply, for the fact that such defects are hidden, when properly proved, may negative the inference that the employee knew of their existence, or was chargeable with such knowledge. As it was latent defects only to which the court referred in the instruction, it is not incorrect in itself upon the point to which we here are directly addressing our discussion. The jury could not have understood that the court referred to any other than latent defects, and it can not be justly said that they were misled upon this point.

It is undoubtedly true that an employee may, within reasonable limits, act upon the presumption that the employer has discharged his duty by exercising reasonable care to supply appliances free from such latent defects as augment the perils of the service. *Pennsylvania Co.* v. *Whitcomb*, 111 Ind. 212 (219) ; *Hard* v. *Vermont, etc., R. R. Co.*, 32 Vt. 473.

The general rule is that negligence or breach of duty is not presumed, and this rule must benefit the employee as well as the employer. It can not be a sword to the one and a. shield to the other. But the rule to which we have referred does not authorize an employee to act without care. He must, notwithstanding the presumption, use reasonable care, but reasonable care, as we have seen, does not cast upon him the duty of making an inspection to discover latent defects. It is evident from what we have said that the instruction is not erroneous, because it states that the presumption is that the employer's duty was performed. It is probably true that the language employed is too broad, and that it should, in order to express the law with accuracy, have been limited by incorporating into the instruction appropriate words expressing the rule that ordinary care is required of the employee. But the instruction is to be construed as part of the entire series, and when thus construed we can not say that there is.

available error, even if we could say so much if the instruction stood entirely alone. Other instructions do explain the one under direct examination, and, taking the entire series into consideration, we certainly can not adjudge that there was such error as requires a reversal.

Counsel say that "It is true, that the court below in some places gave some substantially correct instructions," but they contend that the other instructions in the case necessarily misled the jury because of repeated erroneous statements. They also say that the giving of an erroneous instruction is not cured by giving a contradictory one, unless the erroneous instruction is withdrawn, and they refer us to Elliott's Appellate Procedure, section 705. We recognize the general rule stated by counsel, but we must also keep in mind and justly regard another rule, and that is this, instructions are to be construed as an entirety. See authorities cited in Elliott's Appellate Procedure, section 648. Applying the rule last mentioned, and keeping in view the general statements in the instructions to which objections are urged, and the specific statements in other instructions, we feel bound to adhere to our original opinion.

We do not deem it proper to here discuss other questions, for we think the disposition made of them in the original opinion is the correct one.

Petition overruled.

Filed Oct. 13, 1892.