# CARMEN TORRES by Her Next Friend and Natural Guardian, Francisco Torres,

*v.*

# LUIS RUBERT Y CATALÁ ET AL.

San Juan, Law, No. 965.

INSTRUCTIONS TO THE JURY.

Jury Trial—Belief of Counsel.

1. It is immaterial what counsel believes as to the issue, and if expressed, the jury will be instructed to disregard it.

Witness—False Statement.

2. If a witness makes one false statement, the jury may in their discretion disregard his evidence on all points.

Evidence—Absence—Positive.

3. That a party in possession of evidence does not produce it may be taken into account by the jury. Positive evidence has more weight than negative evidence.

Intimidation of Witness—Next Friend.

4. If a suit is brought by next friend, his intimidation of a witness must not be visited upon the infant plaintiff.

Suit for Damages—Elements.

5. In a damage suit the plaintiff must prove (1) the injury to him; (2) that it was due to negligence of the defendant or his servants; and (3) the amount of damages suffered. The third element is immaterial unless the other two are first proved.

Injury—Undisputed.

6. If the evidence is undisputed that the defendant was injured, the court may instruct the jury that the injury occurred.

NOTE.—The authorities on the question of imputed negligence of driver to passenger are collated in a note in 8 L.R.A.(N.S.) 597.

Torres v. Rubert y Catalá.

Plaintiff—Negligence of Her Driver.

7. Where plaintiff is in a buggy with her father, she is identified with him, and, as to persons on the road, is bound by his negligence.

Injury by Bulls—When Ownership Immaterial.

8. In a suit when the claim is for injuries caused by bulls frightening a buggy horse, the question is not as to ownership of the bulls, but as to whose servants were conducting them.

Damages—Items.

9. The jury must disregard items of damages alleged but not proved.

Damages—Suffering.

10. There can be no proof of the money equivalent of suffering. If the suffering is proved, it is for the jury to determine the sum to be allowed plaintiff.

Damages—Excessive.

11. A verdict for excessive damages is improper, and will not be allowed to stand.

Charges—Federal Practice.

12. Under the Federal practice, special charges good in themselves may be refused if substantially embraced in the general charge of the court.

Servant—Test of.

13. The test of master and servant is not so much employment as control or the right to control the servant.

Damage by Cattle—Porto Rico.

14. The conductor of cattle along a highway is, under the Porto Rican law, liable for damages done by them.

Witness—Wilful False Statement.

15. The whole testimony of a witness testifying falsely may be disregarded by the jury.

Personal Injuries—Damages.

16. The measure of damages from personal injuries is not fixed by law, but left to the good sense and discretion of the jury.

Damages—Measure.

17. Damages should include everything of which a party has been deprived as a direct and natural consequence of the injury, present or future.

Torres v. Rubert y Catalá.

Preponderance of Evidence—Doubt.
     18. If the evidence is in doubt as to any material element of the
     plaintiff's case, the jury must find for the defendant.

Court—Sympathy.
     19. Evidence, and not sympathy, must control.   A legal tribunal
     is a court of justice, and not of sympathy.


December 6, 1913.


—————


*Mr. Francis Neagle* for plaintiff.


*Mr. F. H. Dexter* for defendant.


HAMILTON, Judge:


Gentlemen of the Jury,—I believe this is the third day we have been on this case, and it has been presented fully and well by counsel.  Even the fact that they differ and sometimes clash is not a reflection upon either one or the other.   It is the duty of the court to keep this within limits.   In their earnestness in presenting their case, there will be differences, and there may be words spoken in heat which would not be spoken otherwise. Eliminate that from the case, if there has been anything of the sort, and let us get down to the law and the facts.

As most of you are aware, there are two kinds of instructions which the court gives you,—first, relating to cases in general, and then as to this case in particular.   The first need not be repeated in detail, but I will call your attention to some of them in passing.

1. In the first place, counsel on both sides are very apt to,

and I think in this case did, tell you their belief that so and so was not to be believed, and that such and such a fact they believed. This of court is immaterial. It makes no difference what counsel believe. We assume that each one believes his own case, but that has nothing to do with you. The question is what do you believe about the facts of the case. In every case the burden, of course, is on the plaintiff. The plaintiff must make out his case. The defendant has nothing whatever to do but sit still, and, if the plaintiff does not make out his case, that is the end of it.

This particular case is somewhat as follows. Taking the ·complaint, you must believe, in order to find for the plaintiff, that on the evening of March 1, 1913, the ₒ plaintiff with her stepmother and father were proceeding along the public road with all due care and diligence, in compliance with the requirements of law. (I am reading from the complaint.) That the employees of the defendants, under the instructions of defendants, were driving a large herd of bulls in a negligent and improper manner; that the horse attached to the plaintiff's vehicle became frightened, and the defendants' peons did not exercise reasonable care in attempting to control the cattle. That the horse in consequence of this ran away, overturning the carriage, the plaintiff being thrown on her head, causing her injuries. As a result of this fall, the plaintiff remained many weeks in a state of insensibility, and, as a result of such injury suffered damages, not exceeding $50,-000.

2. That is substantially the case which is before you. That has to be proved, or the plaintiff has not made out her case. You are to be made to believe this, of course, by a preponder-

Torres v. Rubert y Catalá.

ance of evidence, not beyond a reasonable doubt,—that is only in criminal cases, and does not come up in this court for some weeks. ·If there are contradictions in the evidence, you should try, as far as you can, as reasonable men, to reconcile them. Do not lightly assume that a witness is stating an untruth. If, however, gentlemen, you come to the conclusion from the demeanor of the witness or from what he or she says, that he or she is lying, then you may disregard the testimony of that witness altogether. Not that you have to do it, because even a lying witness may tell some truth, but you are at liberty to let the lie affect the whole, because you might not be able to discriminate.

3. The absence of material evidence on the part of either side, where you might expect that party to be in possession of the evidence and be able to place it before you, is something that you may take into account. And negative evidence, of course, you realize has not the same weight as positive evidence. Just by way of illustration, but not to fix your mind upon that particular fact, if one witness said that there was a light either on the carriage or carried by the men with the bulls, and another witness equally credible did not see the light, you would attach more importance to the positive testimony than to the negative, provided the witnesses were equally credible.

4. An unfortunate incident arose during this case, in which something has been said about the intimidation of a witness, and the court would like to say that there are two elements to it. If such a thing occurred, it is a contempt of court, and the court would take care of it. That part is not for the jury at all. If there has been intimidation of a witness by a party,— and here the allegation is that the father of the plaintiff .did

Torres v. Rubert y Catalá.

this,—if from the evidence which I permitted to be brought before you, you think that there was any such intimidation, you will not go as far as counsel has suggested and visit it upon the plaintiff. If the plaintiff's father did any such thing, it is a reflection upon the plaintiff's father, who was a witness. If he would do that, you would be at liberty to consider that he might do other things, and let that reflect upon his credibility, whether you would believe what he says; but the court charges you that this is not to be visited upon the plaintiff. The court is, of course, not passing upon the fact whether there is any intimidation or not. It is for you to say, for the present purposes, whether you believe there was any or not. If you think it has been explained by the relations of the two witnesses prior to this time, it need not affect your deliberations one way or the other. So much, gentlemen, for what perhaps I could call instructions.

Now as to a charge relating to this particular case. This is a suit for negligence, or rather for damages caused by the negligence of the defendants, and, as usual, there are three elements to be taken into account. This comes up under §§ 1803 and 1804, rather familiar sections, of the Porto Rico Code, which are what I think and hope is the law all over the world, that anyone is liable for the results of his negligent acts. And in this particular case there is the variation or additional element that a person who is conducting a business is liable for the acts of his servants or his employees in the pursuit of that business, and that is the claim here. There is no allegation that the defendants themselves went out and upset the plaintiff's carriage. It is the question of whether they are liable for the acts of certain people, who, it is alleged, did this.

Torres v. Rubert y Catalá.

5. There are three elements, then: First, you must be satisfied that there was injury to the plaintiff; second, that the injury was due to the negligence of the defendants' servants; and third, supposing those two are granted, but not unless they are proved, then what amount of damages would you allow to the plaintiff? And you observe, gentlemen, I am not here to say, and do not at all undertake to say, that there was negligence on the part of the defendants. In other words, I am not instructing you to find one cent. In discussing the matter of damages, as I shall, it is simply on the supposition that you do find the first elements.

6. Now as to the injury to the plaintiff. I hardly think it can be said to be a disputed fact in the case that the plaintiff was injured, injured seriously for a while. If there is any question about that, the undisputed evidence is such that the court would be justified in saying that the plaintiff was injured on this occasion, injured by being thrown from a carriage, and picked up insensible, and remained insensible for some time. So that that element, need not be discussed. We all agree that there was injury.

7. The more serious question for us perhaps is, Was this injury caused by the negligence of the defendants or the defendants' agents? It was, of course, not caused by the defendants personally, as I remarked. The question then is, supposing the injury was caused by bulls, as alleged in the complaint, were the defendants liable for that? In the first place the defendants deny that the injury occurred at all in the way in which it has been alleged,—I read to you from the complaint. I could read to you from the answer to the effect that one defense set up is that the accident did not occur in that way at all; that the plain-

tiff's father was driving the vehicle negligently through a herd of bulls, rapidly, and that whatever happened was due thereto. And that would bring up an interesting question as to how far the plaintiff would be liable for the acts of her father. It is a question which has come up, I think, while some of you have been serving on the jury, and it is a much mooted question, as to how far a person who has been injured can be affected by contributory negligence, in this case, of the father. But, for the purposes of this case, the court will charge you that the plaintiff was identified with her father in this matter. Her father was driving the vehicle, and the plaintiff was there with him, and there is no evidence that the plaintiff objected in any way to the method of procedure. While it may not be altogether free from doubt, the court thinks it is justified under the facts of the case in charging you that the plaintiff and her father at the time of the accident are to be considered as identified, and that, if there was negligence on the part of the father in driving through the bulls in a reckless manner, that is not the fault of the defendants, and should not be visited upon the defendants.

That would be one defense, as set up in the answer,—that the occurrence did not happen in the way alleged in the complaint at all; that it was due to the negligence of the plaintiff herself, or of one with whom she was identified. If you believe this, of course you would not find for the plaintiff. A person cannot take advantage of his own wrong.

8. Another defense set up is that the bulls did not belong to the defendants, and that therefore the defendants are not liable for what was done by the bulls, admitting that they did cause the running away of the horse. The court would charge

you that that would not in itself be a good defense. In the first place, you would take into account whether the bulls did or did not belong to the defendants. There is evidence tending to show a sale of these cattle on this very day to someone else, and if that other party had taken possession of the property, and his men were in control of it, the third party was responsible, and it goes without saying that the defendants would not be responsible for what the third party did. But if you find from the evidence that the possession had not been turned over; if you find from the evidence that the sale was not complete, that the money had not been paid,—if that was a condition of the sale,—then the ownership would not have passed. But, going further, if the ownership had passed, the court charges you still that if the bulls were in the custody of the agents of the defendants, even if they had been sold, it is a question of what the agents of the defendants, what the peons did,—not what the bulls did, but what the peons did. And an important question, one of the crucial questions in the case for you, gentlemen, is, Whose peons were those? There is evidence that they were spoken of by the defendant's manager as his peons. But if for the purposes of this sale these peons were those of the third party,—Betancourt I believe his name was,—if they had become in any way his peons, if he was paying them, for instance, if they were subject to his control, the defendants would not be liable. As to whether that was so, you of course will take all the evidence into account. If he did not pay them, but paid the defendants for the services of the defendants' peons, that is one thing which you may take into account. If this third party directed them and paid them and assumed complete control, they would, for

the purposes of this case, be his, and not the defendants.' That is a question which you will have to determine from all the facts of the case. To whose control were they subject? The fact that Betancourt paid the defendants for the time of the defendants' peons would not make them Betancourt's peons, if you find that that was a fact. If the defendants had for the time being lost control of these peons, they were no longer their peons, were not subject to them, the defendants would not be liable. Suppose, gentlemen, that while conducting the cattle, Betancourt and the defendants had come along, and had found anything, we will suppose, out of the way, whom would the peons have obeyed in case an order was given to rectify the error? Would it be Betancourt, or would it be the defendants? That is something that you may take into account in determining whose agents they were. You are liable for the acts of your agents. Now whose agents were these peons in this particular case? That, then, is the second element of the case. Were the defendants negligent?

9. The third is, assuming simply for the sake of argument that the first two elements are true, what would be the measure of damages. This complaint sets out that a large sum of money had been paid for medical attention and so on. The plaintiff, however, has proved nothing of that sort. He has proved the attendance of physicians, I think five of them at one time, but there is no evidence that they charged anything; so that you cannot allow anything for the services of the physicians. It is the plaintiff's business to prove whatever damages she suffered. And so as to hospital bills, and so as to any expenditures of cash. There is no evidence whatever of anything of that sort in this case, and you cannot take such a claim into account.

Torres v. Rubert y Catalá.

The complaint says that, as a result of her injury, plaintiff has received an injury to the brain which has caused her to become an idiot, and that such condition of idiocy will in all probability continue permanent. This remains in the complaint and it is for you to say as to that particular element whether there is proof of it. Idiocy you have heard defined by physicians in a very interesting way, as to how it shows itself, what causes it, and that it is permanent, and it is for you to say under that evidence whether you think that the plaintiff is an idiot, or will very probably become an idiot.

10. The remaining element of injury would be this, suffering,—physical and mental. It is hard to discriminate between physical and mental suffering. Our bodies and our minds are never disassociated, but nevertheless there is a distinction between the two, and the complaint alleges and one side of the proof tends to show suffering; in fact this could not be avoided. I may say there is no question that there was suffering, and it is for you to say what amount of damages, provided always that the defendant is liable, what amount of damages would under the Porto Rican law compensate for that suffering. Gentlemen, there is no scale for suffering. I could not tell you, if the facts were conceded, what such suffering amounts to in dollars and cents. But still it is a matter which the jury can and must entertain. To remain insensible for months, to have some resulting injuries still existing, if you find that such is the case, cause damage, and it is for the jury to put some reasonable money equivalent upon it.

11. It is only fair, however, gentlemen, to say this,—that excessive damages in any case should not be allowed. It is a question, under the Porto Rican Code, of equivalents, what

would be a fair compensation for the suffering, not anything beyond that, but whatever you may think would be an equivalent; and if anything excessive were allowed in any case in this court, it would be the duty of the court, of course, to set aside that verdict. So that, not on that account, but because you are twelve men sworn to do your duty, and I know you will do your duty in the matter. I leave that to you, knowing that you will do your duty, just as I hope to do mine.

12. I have been asked, gentlemen, to give some charges, a large number of charges, and I would like to say to counsel that I have refused a great many of them, not because they are incorrect, but for the simple reason that the Federal court is not bound to repeat charges if they have been given in the course of the general charge. Refusal is really an assistance to the jury, because they might think there was some contradiction. So because a good many of these charges have been given, they are now refused. They are embraced in the general charge I have given. In fact, even some that I will give are probably embraced in the general charge.

13. To constitute the relationship of master and servant in so far as the liability of the former for the acts of the latter is concerned, there need be no actual contract of employment nor payment for the services. The relation of master and servant exists where the employer selects the workman, and may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance. The power to control the alleged servant is the test of the existence of the relationship. 26 Cyc. 1519, and cases cited.

A person who avails himself of the temporary use of the services of a servant regularly employed by another person may

be liable as master for the acts of such servant during the temporary service. The test is whether in the particular service which he is engaged or requested to perform the servant continues liable to the direction and control of his original master, or becomes subject to that of the person to whom he is lent or hired or who requests his services. It is not so much the actual exercise of control which is regarded, as the right to exercise such control. To escape liability, the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person. Subject to these rules, the original master is liable where the control of the servant is retained by him. 26 Cyc. 1522, and cases cited. Stewart v. California Improv. Co. 131 Cal. 125, 52 L.R.A. 205, 63 Pac. 177, 724; Quinn v. Complete Electric Constr. Co. 46 Fed. 507.

If you find that the defendants had the right to direct the peons driving the cattle as to the details of that work, as well as the result to be accomplished, then I charge you that these peons were the servants of the defendants, and if you find this fact, then it is immaterial who owned the cattle. 26 Cyc. 967.

14. The conductors of cattle along the highway are, under the Porto Rican road law, § 26, liable for damages caused by the cattle.

Any person who by his act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done, under § 1803 of the Civil Code. The next section says: The owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed, or on account of their duties.

15. If you find that any of the witnesses whose testimony has been contradicted or seems to be inconsistent, the several parts with each other, has wilfully sworn falsely with respect to any material matter, you are at liberty to disregard the testimony of such witness altogether. If a witness knowingly, wilfully, or purposely testified falsely, he may be discredited altogether. Mann v. Arkansas Valley Land & Cattle Co. 24 Fed. 261, affirmed in 130 U. S. 69, 32 L. ed. 854, 9 Sup. Ct. Rep. 458; American Bell Teleph. Co. v. People's Teleph. Co. 22 Blatchf. 531, 22 Fed. 309, affirmed in 126 U. S. 1, 31 L. ed. 863, 8 Sup. Ct. Rep. 778.

16. In actions for personal injuries the law does not attempt to fix any precise rule for the measurement of damages, but from the necessity of the case leaves their assessment to the good sense and discretion of the jury. 13 Cyc. 136, and cases cited; Wheaton v. North Beach & M. R. Co. 36 Cal. 590, 2 Am. Neg. Cas. 164; Boyce v. California Stage Co. 25 Cal. 460, 9 Am. Neg. Cas. 66; Aldrich v. Palmer, 24 Cal. 513; Frericks v. Bermes, 22 Fed. 424.

17. If you find that the defendants are liable, the damages awarded should bear a fair basis of compensation for the injury sustained, and should include everything of which a party has been deprived as a direct and natural consequence of the injury. Wabash, & W. R. Co. v. Morgan, 132 Ind. 430, 31 N. E. 661, 32 N. E. 85; Huizega v. Cutler & S. Lumber Co. 51 Mich. 272, 16 N. W. 643; Kentucky C. R. Co. v. McMurtry, 3 Ky. L. Rep. 625.

In estimating damages in cases of injury to the person, the jury may consider the physical pain and mental suffering under-

gone by the plaintiff as a result of the injury. 13 Cyc. 38, and cases cited note 6; 13 Cyc. 39, and cases cited note 10.

The duration of the illness, and physical suffering, are elements which you should consider. Quinn v. Long Island R. Co. 34 Hun, 331; Hunt v. Hoyt, 20 Ill. 544.

Compensation is not limited to actual pain and suffering before trial, but extends to such future suffering as must necessarily result from the injury sustained, but not any other that does not necessarily result. Washington & G. R. Co. v. Harmon (Washington & G. R. Co. v. Tobriner) 147 U. S. 571, 37 L. ed. 284, 13 Sup. Ct. Rep. 557; Eddy v. Wallace, 1 C. C. A. 435, 4 U. S. App. 264, 49 Fed. 801, 7 Am. Neg. Cas. 462.

The jury should assess damages for all injuries, past and prospective, bodily and mental, believed by them to be the necessary results of the injuries inflicted. Denver & R. G. R. Co. v. Roller, 49 L.R.A. 77, 41 C. C. A. 22, 100 Fed. 738; Holyoke v. Grand Trunk R. Co. 48 N. H. 541; Hickinbottom v. Delaware, L. & W. R. Co. 15 N. Y. S. R. 11.

But only such future damages can be recovered, or any damages can be recovered, as the evidence makes reasonably certain is necessarily due to the injury sustained. The jury may consider the effect upon the health of the plaintiff, not only at the present time, but in the future, so far as appears from the evidence. Saldaña v. Galveston, H. & S. A. R. Co. 43 Fed. 862; Davidson v. Southern P. Co. 44 Fed. 476.

18. You are instructed that plaintiff can only recover by establishing to your satisfaction, by a preponderance of the evidence, the negligence of the defendants and injury to her person. If you find the evidence on both sides to be conflicting

and subject to doubt as to the negligence or injury, then you must find for the defendants.

If you believe from the evidence that the bulls or cattle carried lights, and were being conducted on the right side of the road, then if a collision occurred between any of the said bulls or cattle and the coach in which plaintiff was riding, the defendants are not liable.

If you believe from the evidence that the cattle in question did not belong to the defendants, and were being conducted under the orders and directions of the witness Betancourt, the defendants are not liable, even though you should believe from the evidence that such cattle were not being conducted in a careful and proper manner.

If you believe from the evidence that after the collision between the carriage and the bull, plaintiff's father stopped the horse and alighted from the coach, and that the horse then ran away, plaintiff cannot recover.

You are instructed that no damages can be allowed for any suffering, mental or otherwise, which the father or stepmother of plaintiff may have suffered as a result of the injuries to plaintiff. This is a suit by the plaintiff, and not by the parents.

If you believe, from the evidence, plaintiff to be at the present time in an ordinary and normal state of health, and that she will suffer no permanent injuries as a result of the accident in question, you cannot allow any damages to her on the ground of permanent injuries.

Under no circumstances can you allow any damages in excess of such sum as may compensate plaintiff for physical pain and mental suffering actually sustained by her, resulting from

Torres v. Rubert y Catalá.

the negligence of defendants. You are not at liberty to allow damages for any speculative or supposed sufferings.

19. You are cautioned against taking into consideration any elements of sympathy or sentiment in favor of plaintiff, and no verdict can be awarded by you which is not based upon a preponderance of the evidence in the case. That of course is true. I did not mention it in the main charge, but this tribunal is a court of justice, and not of sympathy. The plaintiff should be allowed whatever damage has been proved that she has suffered, but nothing for sympathy.

If you believe from the evidence that the cattle in question were accompanied by two or more peons, that they were accompanied by one or more lamps or lights, and that they were conducted on the right side of the road, then such cattle were conducted in a lawful way, and you cannot find for the plaintiff, even if you believe from the evidence that she suffered all the injuries claimed by her.

Gentlemen, the case is now in your hands, and you will retire as usual, and select a foreman, and deliberate and bring in a verdict on one of these two forms: We, the jury, find for the plaintiff and assess her damages at the sum of $————————. That is signed by your foreman. If you find for the defendant, it will be the simple form: We, the jury, find for the defendant, and signed by your foreman.

The jury found a verdict for the plaintiff of $500.