## AMERICAN ROLLING MILL COMPANY v. HULLINGER.

[No. 20,100.   Filed June 26, 1903.   Rehearing denied January 13, 1904.]

MASTER AND SERVANT.—*Vice-Principal.*—*Complaint.*—A complaint by a servant for personal injuries seeking to charge defendant with negligence because of the omission of defendant's master mechanic, which charges that the master mechanic not only had full charge of the work at which plaintiff was engaged at the time of his injury, but that he had been "intrusted by said defendant with the duty of keeping the ways, works, plant, tools, and machinery connected with and in use in the business of said defendant corporation in proper condition," sufficiently shows that the master mechanic was a vice-principal. *p. 674.*

SAME.—*Negligence.*—*Assumption of Risk.*—*Complaint.*—*Employers Liability Act.*—The doctrine of assumed risk is involved in an action arising under the first subdivision of §7083 Burns 1901 for injuries sustained by a servant who was assisting in the construction of a building, by reason of the negligence of the master in leaving a bent or truss leaning against a gin pole without being held in position with guy-ropes, or other means of support, and in such case the complaint must state facts showing that plaintiff did not assume the risk. *pp. 674–689.*

From Delaware Circuit Court; *J. G. Leffler*, Judge.

Action by James H. Hullinger against the American Rolling Mill Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Rollin Warner* and *A. W. Brady*, for appellant.
*G. H. Koontz*, for appellee.

GILLETT, J.—Suit for personal injury, instituted by appellee against appellant. The complaint of the former seeks to charge appellant with negligence because of the omission of its master mechanic, and the first question is whether it appears from the complaint that said master mechanic was not a co-servant, but was a person for whose acts the appellant was responsible. It is charged in said pleading not only that said master mechanic had full charge of the work at which appellee was engaged at the time of his injury, but that he had been "intrusted by said defendant with the duty of keeping the ways, works, plant, tools, and machinery connected with and in use in the business of said defendant corporation in proper condition." The complaint shows that the master mechanic was a vice-principal, and in that particular, at least, facts are stated on which a common law liability may be based. *Southern Ind. R. Co.* v. *Martin,* 160 Ind. 280.

The further question that is presented concerning the complaint is whether it should state facts showing that appellee had not assumed the risk, which in this case arose from leaving a bent or truss leaning against a gin pole without being held in position by guy-ropes or other means of support. It is admitted by counsel for appellee that this showing would have been necessary, according to the course of decision in this State, in stating a liability for negligence between master and servant not resting upon any statute. *Louisville, etc., R. Co.* v. *Sandford,* 117 Ind. 265; *Indiana, etc., Oil Co.* v. *O'Brien,* 160 Ind. 266, and cases there cited.

At the basis of every well-grounded action for negligence must lie a legal duty to use care. *Brooks* v. *Pittsburgh, etc., R. Co.,* 158 Ind. 62. Otherwise stated, a complaint for negligence should exhibit a duty owing. Black, Law & Prac. in Accident Cas., §150. Notwithstanding the duties the master owes the servant, yet, at common law, if it appears that the latter had assumed the risk,

there is no liability for negligence. This is but an appli-cation of the maxim, *volenti non fit injuria,* which states a principle of very broad application in the law. The master may not have performed the duty required of him, but if the servant knows that such duty has not been per-formed, and appreciates the extent of the risk that he thereby runs, or should have known and appreciated the same, he ordinarily assumes the risk, and this absolves the master from liability for the resulting injury. *Indi-ana, etc., Oil Co.* v. *O'Brien, supra; Fitzgerald* v. *Con-necticut River Paper Co.,* 155 Mass. 155, 29 N. E. 464, 31 Am. St. 537; *Miner* v. *Connecticut River R. Co.,* 153 Mass. 398, 26 N. E. 994; *Sullivan* v. *India Mfg. Co.,* 113 Mass. 396; *Mundle* v. *Hill Mfg. Co.,* 86 Me. 400, 30 Atl. 16.

As said in *Fitzgerald* v. *Connecticut River Paper Co., supra:* "It is well settled that a servant assumes the obvi-ous risks of the service into which he enters, even if the business be ever so dangerous, and if it might easily be conducted more safely by the employer. This is implied in his voluntary undertaking, and it comes within a prin-ciple which has a much broader general application, and which is expressed in the maxim *volenti non fit injuria.* The reason on which it is founded is, that, whatever may be the master's general duty to conduct his business safely in reference to persons who may be affected by it, he owes no legal duty in that respect to one who contracts to work in the business as it is."

Appellee's counsel contends that a cause of action is stated under the first section of the act of March 4, 1893 (Acts 1893, p. 294), known as the employers' liability act. Counsel for appellant seek to meet this contention by the claim that said section is unconstitutional as applied to corporations other than railroad, and by the further claim that the common law doctrine of assumed risk is to be read into said statute, thereby making such doctrine a part of

the statute. It is thoroughly settled that this court will not determine a constitutional question if it can perceive another ground on which it may properly rest its decision, and therefore we first inquire whether the second contention of appellant's counsel is well founded. Section 1 of said act (§7083 Burns 1901) is as follows (omitting the enacting clause): "That every railroad or other corporation, except municipal, operating in this State, shall be liable in damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: First. When such injury is suffered by reason of any defect in the condition of ways, works, plant, tools and machinery .connected with or in use in the business of such corporation, when such defect was the result of negligence on the part of the corporation, or some person entrusted by it with the duty of keeping such way, works, plant, tools or machinery in proper condition. Second. Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform, and did conform. Third. Where such injury resulted from the act or omission of any person done or made in obedience to any rule, regulation or by-law of such corporation, or in obedience to the particular instructions given by any person delegated with the authority of the corporation in that behalf. Fourth. Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch yard, shop, roundhouse, locomotive engine, or train upon a railway, or where such injury was caused by the negligence of any person, co-employe or fellow servant engaged in the same common service in any of the several departments of the service of any such corporation, the said person, co-employe or fellow servant, at the time acting in the place, and performing the duty of

the corporation in that behalf, and the person so injured, obeying or conforming to the order of some superior at the time of such injury, having authority to direct; but nothing herein shall be construed to abridge the liability of the corporation under existing laws." Although §2 of said act was repealed in 1895 (Acts 1895, p. 148), yet it may be considered as evincing that it was not the intent of the legislature to create a liability as unrestricted as §1 might seem to imply. Said §2 is as follows: "Neither an employe nor his legal representative shall be entitled under this act, to any right of compensation or remedy against the corporation in any case where the injury results from obedience to any order which subjects the employe to palpable danger, nor where the injury was caused by the incompetency of the co-employe and such incompetency was known to the employe injured; or such injured employe, in the exercise of reasonable care might have discovered such incompetency; unless the employe so injured gave or caused to be given information thereof to the corporation or to some superior entrusted with the general superintendence of such co-employe, and such corporation failed or refused to discharge such incompetent employe within a reasonable time, or failed or refused within a reasonable time, to investigate the alleged incompetency of the co-employe or superior, and discharge him if found incompetent."

The English act (Chap. 42, of 43 and 44 Victoria), on which nearly all of the employers' liability acts of this country are founded, resembles the first section of the Indiana act in the subdivisions; but, instead of providing for a liability in its opening language, the former act provides, after the enumeration of the subdivisions, a remedy to the employe to the same extent "as if the workman had not been a workman of, nor in the service of the employer, nor engaged in his work." It was held in *Thomas* v. *Quartermaine,* L. R. 18 Q. B. D. 685, which involved a defect in a master's premises, that the act had not placed the servant

in any better position than would have been occupied by a stranger who came upon the master's premises at his invitation.    Other cases that are based on similar statutes are to the same effect, and some of such cases involve clauses of the statute that provide for liabilities that did not exist at the common law.    *O'Maley* v. *South Boston Gaslight Co.,* 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161; *Gleason* v. *New York, etc., R. Co.,* 159 Mass. 68, 34 N. E. 79; *Cassady* v. *Boston, etc., R. Co.,* 164 Mass. 168, 41 N. E. 129; *Birmingham R., etc., Co.* v. *Allen,* 99 Ala. 359, 13 South. 8, 20 L. R. A. 457.    This quite clearly appears to be the correct doctrine under statutes like the English statute, for such statutes but put the servant on a footing with strangers, against whom the principle embodied in the maxim may operate.    This would probably have been the effect of §1 of the Indiana statute had it stood alone.    The first, second, and fourth subdivisions, at least, create liabilities based on negligence, thereby remitting the courts to the common law for a definition of negligence; and, as stated above, there can be no negligence without a duty. Besides, there must be some restriction put upon the broad language of §1, or it is conceivable that a case might arise where there would be a liability for the act of a servant more extensive than would have existed had the master been a natural person, and been guilty of the same act or omission as the offending servant.

While the act is remedial, and, to the extent that the legislative purpose can be divined, is not to be construed in a spirit of narrowness, yet, to the extent that the legislative purpose is not expressed, we must follow the rule and reason of the common law.    As said by Mr. Sutherland: "Statutes are but a small part of our jurisprudence.    The principles of the common law pervade and permeate everything which is subject to legal regulation.    Such law defines rights and wrongs of every description and the remedies for public and private redress.    By its principles stat-

utes are read and construed. They supplement or change it, and it adjusts itself to the modification and operates in conjunction and harmony with them. If words from its vocabulary are employed in them it expounds them. If the statutes are in derogation of it, it yields and bides its time; if they are cumulative, it still continues. Rules of interpretation and construction are derived from the common law, and since that law constitutes the foundation and primarily the body and soul of our jurisprudence, every statutory enactment is construed by its light and with reference to its cognate principles." Sutherland, Stat. Const., §289. See *Gibbs* v. *Great Western R. Co.*, L. R. 12 Q. B. D. 208; *Ryalls* v. *Mechanics Mills*, 150 Mass. 190, 22 N. E. 766, 5 L. R. A. 667; *Mobile, etc., R. Co.* v. *Holborn*, 84 Ala. 133, 4 South. 146; *Hodges* v. *Standard Wheel Co.*, 152 Ind. 680; Dresser, Employers' Liability, §3.

In construing the act in question, it has been said in some of our cases that it was intended to put certain servants under certain circumstances into the vice-principal class. *Baltimore, etc., R. Co.* v. *Little*, 149 Ind. 167; *Thacker* v. *Chicago, etc., R. Co.*, 159 Ind. 82. In *Pittsburgh, etc., R. Co.* v. *Moore*, 152 Ind. 345, 44 L. R. A. 638, it was distinctly held that the doctrine of assumed risk was applicable to cases arising under the fourth subdivision of the statute; and in *Whitcomb* v. *Standard Oil Co.*, 153 Ind. 513, this rule was adhered to in a case that brought under review subdivisions one and two of the statute. In the case last cited it was said: "We know of no warrant for this court to accept the intention of the Assembly of 1895 as controlling the construction of a statute passed by the Assembly of 1893, especially where we are required to determine that intention by implication, and we must, therefore, confine ourselves to approved rules of construction and look rather to the intent of the legislature that gave the statute origin, if there is anything obscure in its provisions. But there is nothing obscure in the provisions

American Rolling Mill Co. *v.* Hullinger.

before us, and nothing in them to justify the contention that the employe is thereby relieved from that caution and care of himself required by the common law. There are no express words to authorize such construction, and a principle of the common law so long established and universally approved can not be subverted by implication. The construction contended for would constitute a railroad company the absolute insurer of the safety of its employes against the ordinary and usual perils incident to the unexpected and excusable impairment of its ways, works, etc.; and thus to invest the employe with the sense of indemnity would in large measure strike down that salutary principle of public policy which requires every one in every situation to be alert in the preservation of life and limb."

We have no hesitation in asserting that the doctrine of assumed risk is involved in cases arising under the statute. With the repeal of §2 the common law became operative, and therefore the doctrine of assumed risk became a part of the section that created the liability, except to the extent that the statute may be said to be in conflict with the common law. Thus the old doctrine that the servant injured assumed the risk that his co-servants might be negligent, as an implication from their common employment merely, is not to be held applicable to the servants for whose acts the statute makes the master liable, for such a holding would establish in its full vigor the co-servant rule, which the statute was intended to modify. See *Davis* v. *New York, etc., R. Co.,* 159 Mass. 532; *Woodward Iron Co.* v. *Andrews,* 114 Ala. 243; *Southern R. Co.* v. *Johnson,* 114 Ga. 329; *Terre Haute, etc., R. Co.* v. *Rittenhouse,* 28 Ind. App. 633; Reno, Employers' Liability, §§241, 246, 247, 249, 250; Dresser, Employers' Liability, §2.

It may be said, in passing, that the rule concerning assumed risk is different in cases arising under the employers' liability act, where definitive duties are not prescribed, from what it is where a statute points out definitely what

the master must do in certain cases to guard the safety of the employe. *Davis Coal Co.* v. *Polland,* 158 Ind. 607; *Monteith* v. *Kokomo, etc., Co.,* 159 Ind. 149; *Island Coal Co.* v. *Swaggerty,* 159 Ind. 664.

Of course, in cases of this kind, where the servant is confronted by the exigencies of a new situation, and where he has the implied assurance of reasonable safety to himself, growing out of the command of the person who stands for the master to do the work required, the question of assumed risk often becomes a mixed one of law and fact. *Brazil Block Coal Co.* v. *Hoodlett,* 129 Ind. 327; *Indiana, etc., R. Co.* v. *Bundy,* 152 Ind. 590; Shearman & Redfield, Negligence (5th ed.), §186a; Bailey, Master's Liability, 188, 189. But as the risk that the bent or truss mentioned in the complaint in this case would fall may have appeared glaring, and as the appellee may or should have appreciated the full extent of the danger, we regard the complaint as insufficient.

Judgment reversed, with a direction to sustain the demurrer to the complaint.

## On Petition for Rehearing.

Gillett, C. J.—In the brief on behalf of appellee in support of his petition for a rehearing his counsel earnestly insists that we erred in adjudging the complaint insufficient because of the omission to allege facts showing that the risk which eventuated in appellee's injury had not been assumed by him. Counsel for appellee omits to state whether the complaint attempts to show a common law liability, or whether it is based on the employers' liability act, but he now contends for the sufficiency of said pleading on both grounds. We shall briefly consider the points made, and shall first examine the question as to a common law liability.

The complaint shows that appellant was engaged in the construction of a large building; that the work was being done under one Krick, whom we held in the original opinion was shown to be a vice-principal, according to the averments of said complaint. It is further alleged therein that appellee was working under said Krick; that it became necessary to raise a heavy bent or truss, of a triangular shape, into position on the plates of said building; that said work was being prosecuted by the aid of a mechanical appliance known as a gin pole; that pursuant to the direction of said Krick appellee and a number of his co-employes raised said bent so that it rested on its base, with its apex slightly leaning against said gin pole; that thereupon said Krick carelessly and negligently directed the plaintiff to tie a rope on the base of said bent, and carelessly and negligently omitted to cause said bent to be supported by guylines or other means while appellee was tying said rope, but carelessly and negligently ordered and directed one Edwards to untie said guy-lines and distribute them equally on each side of said bent, which order he obeyed; that appellee did conform to and obey said order given to him, and while he was in a stooping position, having just tied said rope and undertaken to fasten a hook attached to a block and tackle in the loop of said rope, as he was directed to do by said Krick, said bent, owing to the swaying of the heavy ropes of said block and tackle or the swaying of the gin pole, or both, or some other cause unknown to appellee, fell, and that appellee was injured in his effort to escape.

It will be observed that it is not shown whether appellee or Edwards first performed the particular task assigned him, and it does not appear that appellee did not hear the order given to Edwards, and have an opportunity to escape before it was executed. We have, then, a case where it is made to appear that it was negligent to leave the bent leaning against the gin pole without other sup-

port, and yet there is no suggestion that appellee did not know of the situation and of the extent of the danger, or that he relied on the direction of said Krick as amounting to an   implied representation of safety.  It is true that there is a disjunctive statement suggesting that the bent might have fallen from a cause unknown to appellee, but, if it fell from either of the causes expressly stated, we may infer that, so far as knowledge was concerned, he was as well advised of the danger as the master's representative could have been expected to be.   This is not a case where the direction of the vice-principal can be said to have taken the servant out of the course of his employment, for the silence of the complaint upon the point permits us to infer that the details of his work only varied to the extent that the work of construction progressed.

At least, as applied to cases where it may be inferred that the danger had become one of the assumed risks of the employment, it has been many times held that the complaint of the servant must aver facts showing that the risk was not one which he had assumed.  *Lake Shore, etc., R. Co. v. Stupak,* 108 Ind. 1; *Indiana, etc., R. Co.* v. *Dailey,* 110 Ind. 75; *Louisville, etc., R. Co.* v. *Sandford,* 117 Ind. 265; *Wabash, etc., R. Co.* v. *Morgan,* 132 Ind. 430; *Big Creek Stone Co.* v. *Wolf,* 138 Ind. 496; *Peerless Stone Co.* v. *Wray,* 143 Ind. 574; *Potter* v. *Knox County Lumber Co.,* 146 Ind. 114; *Cleveland, etc., R. Co.,* v. *Parker,* 154 Ind. 153, and cases cited; *Chicago, etc., R. Co.* v. *Glover,* 154 Ind. 584; *Indiana, etc., Oil Co.* v. *O'Brien,* 160 Ind. 266; *Williams* v. *Clough,* 3 Hurl. & Nor. 258; *Bogenschutz* v. *Smith,* 84 Ky. 330, 1 S. W. 578; *Buzzell* v. *Laconia Mfg. Co.,* 48 Me. 113; *Coal & Car Co.* v. *Norman,* 49 Ohio St. 598, 32 N. E. 857; *Missouri Pac. R. Co.* v. *Baxter,* 42 Neb. 793, 60 N. W. 1044.

In *Williams* v. *Clough, supra,* a servant sued his master, alleging that the defendant had an unsafe ladder, and that well knowing that said ladder was unsafe, he wrongfully

and deceitfully ordered and directed the plaintiff, as such servant, to carry corn up said ladder, and that the plaintiff, in obedience to said order, and believing said ladder to be fit and proper for use for the purpose aforesaid, and not knowing the contrary, did carry said corn up said ladder, and that while so doing, and by reason of such ladder being unsafe and defective, he fell, etc. It was objected that the declaration should have shown that the servant did not have the means of knowing that the ladder was unsafe, but the majority of the court were of the opinion that the declaration was sufficient. Bramwell, B., however, said: "I abide by the opinion I expressed in the case referred to, that a master can not be held liable for an accident to his servant while using machinery in his employment, simply because the master knows that such machinery is unsafe, if the servant has the same means of knowledge as the master. I should be inclined to say that the declaration is good or bad, as it does or does not negative the servant's means of knowledge. That, however, is a mere question of special pleading. And, as the lord chief baron and my brothers Martin and Channell are of opinion that the declaration is good, it is not necessary that I should further inquire whether it ought to contain, or does contain, such an averment." In this State an allegation of a want of knowledge negatives imputed knowledge. *Pennsylvania Co.* v. *Witte,* 15 Ind. App. 583, and cases cited; *Consolidated Stone Co.* v. *Summitt,* 152 Ind. 297.

Mr. Wood, in his work on master and servant, §382, after stating some of the elements required to be made out by the servant in a suit against the master for negligence, says: "When this is established, he [the servant] is met by another presumption, the force of which must be overcome by him, and that is, that he assumed all the usual and ordinary hazards of the business. To overcome the force of this presumption he must show that the injury did not arise from an obvious defect in the instrumentalities of

the business, or from a hazard incident to the business, but from causes that were previously unknown by him to exist, or from extraordinary causes and not from causes that he ought to have foreseen, and can be fairly said to have assumed, or some legal excuse for taking the risk, if known to him, which strips his act of the imputation of negligence and overcomes the presumption that he voluntarily took the risk upon himself." While it is true that the servant is not bound to anticipate that his master will, without warning, direct him to do an act that will expose him to serious peril, yet even such peril, if of obvious character, may become a part of the risks of the employment, if, with a knowledge of its nature and extent, the servant voluntarily undertakes it. As stated in one of the leading text-books on the law of negligence: "If, however, the servant knows what the new dangers are, or if they are obvious to persons thus suddenly called to do such work, and he is able to appreciate the peril involved, and is not acting under such coercion as would in other cases excuse him, he assumes the risk of this new work, to the same extent as he did those of his regular employment." Shearman & Redfield, Negligence (5th ed.), §186a.

It is required that a complaint should state facts showing the existence of a duty in order to predicate a charge of negligence upon it. *Faris* v. *Hoberg,* 134 Ind. 269, 39 Am. St. 261; *Louisville, etc., R. Co.* v. *Sandford,* 117 Ind. 265. In the latter case it was said that where the servant has assumed the risk the master "is exonerated because the employe himself assumes the danger, as increased, and, as he voluntarily assumes it, the master is relieved. The parties change positions; the employe assumes the risk that, if it were not for his knowledge, his employer would be compelled to assume. The duty which the employer is under is materially affected by the element of knowledge, and unless a duty is shown of course there can be no actionable negligence, since a duty lies at the

foundation of every right of action grounded on the negligence of a defendant."

It is true that if the facts of the case had been shown in evidence under a sufficient complaint, the jury, having to deal with a mixed question of law and fact, might have been authorized to conclude that appellee had not assumed the risk under the particular circumstances; but appellee can not successfully invoke authorities upholding the right of recovery upon the part of a servant, decided as questions as to the effect of evidence, to save a bad complaint. In *Louisville, etc., R. Co.* v. *Sandford, supra,* it was said: "The question comes to us as one of pleading and not as one of evidence. Material facts must be directly stated in a pleading, but they may be inferred from testimony and from circumstances, when the question is as to the measure and sufficiency of proof. Inferences are admissible and controlling where the question is one of proof, but not so where the question is one of pleading. It is not enough to plead evidence from which the facts may be inferred, but the facts themselves must be stated in an issuable form."

In *Louisville, etc., R. Co.* v. *Corps,* 124 Ind. 427, 8 L. R. A. 636, this court stated: "We are here dealing with a question of pleading and not of evidence. There is, as is well known, an essential difference between matters of pleading and matters of evidence; in pleading, facts must be directly and positively averred, while as matter of evidence conclusions may be inferred, without positive statements, from facts and circumstances. In pleading, it is incumbent upon the plaintiff to state all the facts essential to a cause of action, and if any material fact is lacking the complaint will go down before a demurrer. A material fact is here absent, and that is the fact that the danger was not an incident of the service in which the plaintiff voluntarily engaged. This fact must be averred, as the rules of pleading require, although if the question were one of

evidence it might be inferred." To these statements we may appropriately add the following from the case of *Wabash, etc., R. Co.* v. *Morgan,* 132 Ind. 430, 447: "The general rule is that negligence or breach of duty is not presumed, and this rule must benefit the employe as well as the employer. It can not be a sword to the one and a shield to the other. But the rule to which we have referred does not authorize an employe to act without care. He must, notwithstanding the presumption, use reasonable care, but reasonable care, as we have seen, does not cast upon him the duty of making an inspection to discover latent defects." We deem it clear, in the light of the above authorities, that the complaint was insufficient as a common law statement of liability.

As to the sufficiency of the complaint under the employers' liability act, the general rule is that if a person seeks to maintain an action under a statute, he must state specially every fact requisite to enable the court to judge whether he has a cause of action under the statute. *Ezra* v. *Manlove,* 7 Blackf. 389; *Montgomery* v. *State, ex rel.,* 53 Ind. 108; *Weir* v. *State, ex rel., ante,* 435; *Bartlett* v. *Crozier,* 17 Johns. 439, 8 Am. Dec. 428, and cases there cited; *Austin* v. *Goodrich,* 49 N. Y. 266. In the leading case of *Spieres* v. *Parker,* 1 Durn. & East. 141, which was an action to recover a penalty provided for by statute, the plaintiff in his declaration negatived an exception found in the section providing for the penalty, pursuing the words of the exception. It was held that, as the plaintiff had not brought himself within the exception as construed by the court, his declaration was bad, even after verdict. We have a number of cases in this State in which it is held that if by judicial construction the meaning of an act has been narrowed, so that the provisions thereof do not, without some other element, constitute a crime, it is necessary to charge the offense so as to show that a crime has been committed. *Bates* v. *State,* 31 Ind. 72; *Manheim* v. *State,*

66 Ind. 65; *Schmidt* v. *State,* 78 Ind. 41; *State* v. *Welch,* 88 Ind. 308; *Stropes* v. *State,* 120 Ind. 562. It was held by the supreme court of Massachusetts, in *Williams* v. *Hingham, etc., Turnpike Corp.,* 21 Mass. 341, after a consideration of the English authorities, that the rule of pleading relative to negativing exceptions is applicable to cases of a civil nature.

In Elliott, Railroads, §1349, in speaking of employers' liability acts, it is said: "There can, of course, be no doubt that the general rules of pleading and evidence apply to actions against employers under the statute except where they are changed by the statute."

Under §2 of the act under consideration (§7084 Burns 1894) it was expressly provided that neither an employe nor his legal representative should be entitled to recover. under the act in any case "where the injury results from obedience to any order which subjects the employe to palpable danger." This clearly shows one of the intended limitations upon the language of §1, and with the repeal of §2 the liability in a given case must rest on the section containing the enacting clause. Not only do the rules of construction render it proper for us to construe the enactment in the light of the common law, but by the creation of a liability based on "negligence" we are required to look to common law principles in determining the meaning of the General Assembly in the use of the term. As observed by Lord Cranworth in *Patterson* v. *Wallace,* 28 Eng. Law & Eq. 48: "In England, in Scotland, and in every civilized country, a party who rushes into danger himself can not say: That is owing to your negligence." The common law and statute being the very warp and woof of the law on which a claim of liability is asserted, we deem it clear that the exception must be implied in the very section which extends the responsibility of the master, and that the exception should be negatived.

If the allegation that the appellee was "in the exercise

of due care and diligence" can be said to amount to an averment of a want of contributory negligence, yet this does not show that the risk was not assumed. As said in *Indiana, etc., Oil Co.* v. *O'Brien,* 160 Ind. 266: "Where a person has knowledge of and fully appreciates a danger, and under such circumstances, without any special exigency compelling him, he exposes himself to such danger or peril, his act in the premises may be deemed to have been voluntary. Contributory negligence in such a case can not properly be said to be an element therein, for certainly the voluntary act of a party in exposing himself to a known and appreciated danger is wholly incompatible with an act of negligence or carelessness, for it must be manifest that carelessness in regard to a matter is not the same as the exercise of a deliberate choice in respect thereto. Freedom of the will, in fact, is the thing emphasized by the principle asserted in the maxim *volenti non fit injuria.* It certainly must be true that in an act where design is shown the imprudence or negligence of the actor is wholly immaterial as a feature therein."

After a careful reëxamination of the questions discussed in the brief of appellee on petition for a rehearing, our views upon such points, as expressed in the original opinion, have been confirmed rather than shaken. We therefore overrule said petition.