## UNITED STATES BOARD AND PAPER COMPANY *v.* THE STATE OF INDIANA.

[No. 21,566.   Filed May 24, 1910.   Rehearing denied June 29, 1910.]

1.  CRIMINAL LAW.—*Process.* — *Corporations.* — *Statutes.* — Section 1996 Burns 1908, Acts 1905 p. 584, §125, providing that in a criminal prosecution against a corporation "a writ of summons commanding the sheriff to notify the accused thereof, and returnable on the tenth day after its date, shall issue," and that such "summons, together with a copy of the indictment or affidavit, shall be served and returned in the manner provided for the service of summons upon such corporations in civil actions," does not require service ten days in advance of appearance.   pp. 463, 464.

2.  CRIMINAL LAW.—*Corporations.—Notice.—Requirements of.*— Since a natural person may be arrested on a bench warrant and brought forthwith into court for trial, corporations may demand only a reasonable time in which to prepare for trial on a criminal charge.   p. 464.

3.  INDICTMENT.—*Duplicity.—Initial Attack on Appeal.*—An indictment cannot be attacked for duplicity for the first time on appeal.   p. 465.

4.  NUISANCE.—*Pollution of Streams.—Killing Fish.—Indictment.*— An indictment charging that defendant paper company unlawfully discharged filth and offal into a certain stream and thereby "destroyed animal life in said stream," does not sufficiently show a

violation of §2546 Burns 1908, Acts 1905 p. 584, §623, inhibiting persons, firms, and corporations, from discharging any mattter into streams sufficient "to injure or destroy the lives of fish." p. 465.

5. EVIDENCE.—*Judicial Notice.—Animal Life in Streams.*—Courts judicially know that the smaller streams that may not contain fish are infested with many forms of animal life, some of which are dangerous to human life. p. 465.

6. NUISANCE.—*Indictment.—Damage or Discomfort.—Statutes.*— Under §2441 Burns 1908, Acts 1905 p. 584, §535, providing that "whoever causes or suffers any offal, filth or noisome substance to be collected or to remain in any place to the damage, prejudice or discomfort of others or the public" shall be fined, an indictment charging that defendant polluted Blue river "causing the same to become putrid, rotten and offensive to sight and smell, all to the damage of divers other citizens of said State * * * and to the damage and prejudice of the public," and that such pollution rendered such stream "unfit and unwholesome for stock * * * belonging to certain citizens there entitled to have said stock to use said waters of said stream for drinking purposes," is insufficient, there being no charge that the public was affected. pp. 466, 467.

7. STATUTES.—*Reënactment of, After Judicial Construction.*—The reënactment of a statute after a judicial construction thereof impresses the reënacted statute with such construction. p. 467.

8. NUISANCE.—*Indictment.—Facts.*—An indictment for a public nuisance must charge the facts showing such nuisance. p. 468.

From Hancock Circuit Court; *Earl Sample,* Special Judge.

Prosecution by The State of Indiana against the United States Board and Paper Company. From a judgment of conviction, defendant appeals. *Reversed.*

*John W. Kern, William W. Cook, Charles H. Cook* and *William A. Hough,* for appellant.

*James Bingham,* Attorney-General, *Charles L. Tindall,* Prosecuting Attorney, *A. G. Cavins, E. M. White* and *William H. Thompson,* for the State.

MONTGOMERY, J.—The grand jury of Hancock county on September 15, 1908, returned an indictment against appellant, which, omitting the caption, signature and merely formal parts, reads as follows: "That the United States Board and Paper Company, a corporation in the county of Rush,

said State, on the — day of June, 1908, and on divers days since said date and before this presentment, to September 1, 1908, did then and there unlawfully cause, suffer and permit certain offal, filth and noisome substance, the exact composition of which is to this grand jury unknown, to be drained and placed in a certain stream of water called Blue river, then and there running through said Rush county, and into and through Hancock county, said State, and did then and there unlawfully suffer and permit said offal, filth and noisome substance to be carried by the current of said stream into said Hancock county, and there to be collected and remain, which offal, filth and noisome substance then and there occasioned noxious and offensive odors, and which said offal, filth and noisome substance then and there destroyed animal life in said stream, causing it to become putrid, rotten and offensive to the sight and smell, all to the damage of divers other citizens of said State then and there being, and to the damage and prejudice of the public, and which said company, by said noisome substance, filth and offal so collected and permitted to be carried into said Hancock county, as aforesaid, did then and there unlawfully obstruct and maintain an obstruction to the full use of property, by destroying the water of said stream in said Hancock county for domestic purposes, and by rendering it unfit and unwholesome for stock then and there being and belonging to certain citizens there entitled to have said stock to use said waters of said stream for drinking purposes.''

A summons was issued on September 23 requiring appellant to appear before the judge of the Hancock Circuit Court and answer to this indictment on October 3, 1908. The process was served on September 26 upon appellant's superintendent, by reading and by delivering to him a copy of the summons and of the indictment. No formal appearance for appellant was entered, but the cause was set for trial October 26, reset for October 30, and again reset for November 5, 1908. On November 4 the clerk entered a plea of

"not guilty" for appellant. On November 5, appellant, by counsel, entered a special appearance, and moved that the court quash the summons and return of service indorsed thereon, and set aside the plea of not guilty entered by the clerk, for the reason that said writ had not been served on appellant ten days prior to October 3, 1908.

The statute providing for the issuance and service of process in a criminal action against a corporation reads as follows: "When an indictment is returned, or an affidavit filed against a corporation, a writ of summons commanding the sheriff to notify the accused thereof, and returnable on the tenth day after its date, shall issue. Such summons, together with a copy of the indictment or affidavit, shall be served and returned in the manner provided for the service of summons upon such corporations in civil actions. The corporation, on or before the return day of a summons duly served, may appear by one of its officers, or by counsel, and answer to the indictment or affidavit by motion or plea, and, upon its failure to make such appearance and answer, the clerk shall enter a plea of 'not guilty;' and, upon such appearance being made or plea entered, the corporation shall be deemed thenceforth continuously present in court until the case is finally disposed of." §1996 Burns 1908, Acts 1905 p. 584, §125.

Appellant's learned counsel contend that the provision, "such summons, together with a copy of the indictment or affidavit, shall be served and returned in the manner provided for the service of summons upon such corporations in civil actions," requires ten days' service prior to the date fixed for appearance. This construction is untenable, since the statute in positive terms requires the summons to be made returnable on the tenth day after its date, and hence, excluding the day of service, it would not be possible in any case that the accused corporation could have ten days' notice of the charge before the return date. The sentence quoted does not purport to prescribe the length of time a

defendant shall be notified prior to day of hearing upon a criminal charge, but deals only with the form and manner of service of such summons as has been authorized in the preceding sentence. It is provided with respect to the service of process on a corporation in a civil action, that, "the process against either a domestic or foreign corporation may be served on the president, presiding officer, chairman of the board of trustees, or other chief officer. * * * If none of the aforesaid officers can be found, then upon any person authorized to transact business in the name of such corporation, and if no such person, officer or agent be found in the county where suit is pending, process may be sent for service to any other county in the State where such person, officer, or agent may be found." §319 Burns 1908, Acts 1893 p. 152.

The propriety and necessity for expedition in the hearing of criminal charges are apparent. Natural persons accused of crime may be arrested on a bench warrant and brought into court forthwith for trial. The utmost that a corporation charged with a public offense may demand is reasonable notice of the time fixed for a hearing upon the charge, and we are aware of no authority for the insistence that such notice must not be less than ten days. In this case appellant made no claim that the notice actually received was not amply sufficient in which to engage counsel to appear for it in obedience to the command of the summons; so that no question of the reasonableness of the notice is involved, but the only question is the proper construction of the statute heretofore set out. Our holding is that this statute does not require a corporate defendant to have ten days' notice of a criminal charge against it, and of the time and place of hearing, prior to the date set for such hearing, and that the court below properly overruled appellant's motion to quash the summons and return of service and to set aside the plea entered in this cause.

Appellant offered to file a belated motion to quash the indictment, which was denied by the trial court. It has been assigned for error in this court that the facts stated in the indictment do not constitute a public offense.

It is difficult to determine with certainty upon what theory the indictment was drawn, and as against a motion to quash it might have been amenable to the charge of duplicity, but that objection is not tenable when the sufficiency of the indictment is challenged for the first time in this court. *Naanes* v. *State* (1896), 143 Ind. 299; *Barnett* v. *State* (1895), 141 Ind. 149.

It is alleged in appellant's brief that it is a nuisance *per se* so to pollute the waters of the streams of the State as to destroy the fish inhabiting such waters, and reference is made to §2546 Burns 1908, Acts 1905 p. 584, §623. This indictment however wholly fails to charge that any fish were destroyed by appellant's act, or that any fish inhabited the stream into which it is alleged deleterious refuse matter was drained. It is charged merely that the filth and offal "destroyed animal life in said stream." It is within our knowledge that the smaller streams of the State, which may not be inhabited by fish, are infested with many forms of animal life, between some of which and mankind an inveterate, perpetual and implacable warfare has been decreed. It is accordingly manifest that no offense, under §2546, *supra,* is charged in the indictment.

It is provided by §2441 Burns 1908, Acts 1905 p. 584, §535, among other things, that "whoever causes or suffers any offal, filth or noisome substance to be collected or to remain in any place to the damage, prejudice, or discomfort of others or the public," shall on conviction be fined. The indictment appears to have been founded on this statute, and if it states a public offense it must be by virtue of the provisions just quoted.

Appellant's counsel assail the sufficiency of the indict-

ment, for the reason that the acts complained of are not alleged to have been committed in or near a public 6. place, or that they were done to the discomfort, damage or prejudice of any part of the citizens of this State. In the case of *Mains* v. *State* (1873), 42 Ind. 327, 13 Am. Rep. 364, the indictment purported to charge the accused with keeping and maintaining a disorderly house "to the great damage and common nuisance of all the citizens of the State of Indiana." This court held the words quoted to embody merely a conclusion, and that the indictment was insufficient, and in that connection said: "The indictment does not allege that the house which the appellant was charged with keeping was situate in any public place, as in a city, town or village, nor near any public street or highway; nor does it allege that any person resided near thereto, or was in the habit of passing thereby. In short, there is nothing in the indictment which shows that the house was in the vicinity of any inhabitants, or that any person ever came near it, save those who congregated there by the alleged procurement of appellant. * * * The indictment should have alleged the facts making it a nuisance, as that it was in a public place, or that people resided near thereto, or other similar circumstances, showing that the public was affected thereby."

The case of the *State* v. *Houck* (1880), 73 Ind. 37, sought to charge the maintenance of a nuisance from the keeping of a slaughterhouse "to the great injury, annoyance, and common nuisance of all the citizens of the State of Indiana then and there residing in the neighborhood of said slaughterhouse, and to those passing and repassing said slaughterhouse," and the court, by Worden, J., said: "There is no direct affirmation in the affidavit that the slaughterhouse was in any public place, if, from such statement, it could be inferred that it was injurious to some part of the citizens of the State; nor is there any affirmation that any person resided within the limits of the extent to which the air was contaminated; nor that any person passed or repassed the slaughterhouse

within the limits indicated. In short, no facts are stated to show that any part of the citizens of the State were injured." See, also, *State* v. *Wabash Paper Co.* (1898), 21 Ind. App. 167; *Messersmidt* v. *People* (1881), 46 Mich. 437, 9 N. W. 485; *Morris, etc., R. Co.* v. *State* (1873), 36 N. J. L. 553; *Commonwealth* v. *Webb* (1828), 6 Rand. (Va.) 726; *Commonwealth* v. *T. J. Megibben Co.* (1897), 101 Ky. 195, 40 S. W. 694; 2 Wharton, Crim. Law (7th ed.) §2362.

The decisions of this court heretofore quoted, relative to the necessary allegations in an indictment charging the maintenance of a public nuisance under our statutes, were

7. made long before the reënactment of §§534, 535 of the act of 1905 concerning public offenses. Acts 1905 p. 584, §§2440, 2441 Burns 1908. It follows that an indictment founded upon these statutes, to be sufficient must measure up to requirements of the law in the light of which they were enacted.

The indictment, as we construe it, must contain facts sufficient to constitute a public offense under §2441, *supra*, or

6. fall, and its allegations with regard to the pollution of a certain stream of water must be treated as surplusage. The acts charged against appellant are not such as to constitute a nuisance *per se*, but if a public nuisance resulted therefrom, it must be shown that said acts were done under such circumstances as to affect injuriously the public, or a part of the citizens of this State.

We have already seen that no facts are alleged upon which to predicate the conclusion that the public was affected, nor is the conclusion, that the alleged offensive acts were "to the damage of divers other citizens" of the State, authorized. Appellant is a corporation and not a "citizen" in the ordinary meaning of that term, and no citizen is named to whom the word "other" could have reference. It is not shown that there were any highways, public places, inhabitants or tillable fields in the vicinity of the place where it is alleged the offensive matter was suffered to be collected and to remain,

or that any person came into the infected area. When it is sought to charge the maintenance of a criminal nuisance, sufficient facts must be alleged to enable the court to say that the offending acts, if true, constitute a pub-

8. lic, and not merely a private, nuisance. The indictment under consideration is wholly wanting in the averment of facts necessary to show the maintenance of a public nuisance under the statute upon which it is based; and upon the authorities cited, and upon well-settled principles of criminal pleading, its defects are of such a material and vital character as to render it insufficient as against appellant's attack in this court. *Padgett* v. *State* (1906), 167 Ind. 179; *Pattee* v. *State* (1887), 109 Ind. 545.

The judgment is accordingly reversed, with directions to the trial court to quash the indictment.