## WEISENBERGER *v.* STATE OF INDIANA.

[No. 24,656. Filed March 4, 1931.]

426

*Edward W. Little* and *Earl W. Little,* for appellant.
*Arthur L. Gilliom,* Attorney-General, for the State.

MYERS, C. J.—Appellant, by an indictment in two counts, was charged, tried and convicted (Count 1) of unlawfully manufacturing bed mattresses from material known as "shoddy," and (Count 2) of unlawfully selling and offering to sell bed mattresses manufactured out of material known as "shoddy." Acts 1917 p. 435, §8250 Burns 1926.

Appellant assigns as errors the overruling of his motion to quash the indictment, and the overruling of his motion for a new trial. In support of both of these assignments, he asserts that the statute upon which the indictment is based is unconstitutional and void, for the reason that it is inhibited by Art. 1, §§1, 23, of the Constitution of Indiana.

The challenged enactment, in so far as the same is pertinent to the counts of the indictment, provides that: "No person . . . shall employ or use in the making, remaking or renovating of any mattresses; . . . (b) Any material known as 'shoddy,' and made in whole or in part from old or worn clothing, carpets, or other fabric or material previously used, or any other fabric or material from which 'shoddy' is constructed. (2) No person . . . shall sell, [or] offer to sell . . . any mattress made, remade or renovated in violation of sub-section one of this section."

The indictment, Count 1, charges that appellant did "unlawfully, feloniously and knowingly manufacture bed mattresses made from material known as 'shoddy' which mattresses were then and there made from old and worn clothing, carpets, old mattresses and other fabrics and material which had been previously used from which said fabric and material shoddy is constructed." Count 2, that he did "unlawfully and knowingly sell and offer to sell, deliver and have in his possession with intent to sell, deliver and consign, bed mattresses which had then and there been made and

manufactured from old worn clothing, old mattresses, carpets and other fabrics and material which had been previously used known as shoddy." It will be noticed that the indictment is limited to shoddy made from old or worn or previously used articles.

As we understand appellant, he is not claiming that the statute is unreasonable or that it unjustly deprives him of any of his natural rights. If such a claim were made, it could not be sustained, for the reason that we would be compelled in that respect to abide by the implied or expressed determination of the Legislature. *Hedderich* v. *State* (1885), 101 Ind. 564, 1 N. E. 47, 51 Am. Rep. 768.

Generally speaking, either the federal or state constitution supplies the only standard for determining the validity or invalidity of a statute. In this case, as we have seen, appellant relies upon §1, *supra*, as giving him the "unalienable" right to "life, liberty, and the pursuit of happiness," and §23, *supra*. "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

A constitutional personal liberty clause, or the right to pursue any proper vocation, is regarded as an inalienable right, and a privilege not to be restricted except for good cause. *In re Leach* (1893), 134 Ind. 665, 34 N. E. 641, 21 L. R. A. 701; *Wyeth* v. *Cambridge Board of Health* (1909), 200 Mass. 474, 86 N. E. 925, 23 L. R. A. (N. S.) 147, 128 Am. St. 439; *Meyer* v. *Nebraska* (1923), 262 U. S. 390, 399, 43 Sup. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446.

The authority of the Legislature to enact the statute here in question must be sustained, if at all, as a proper exercise of police power for the promotion of peace, safety, health or welfare of the public. Courts are not concerned in the wisdom or ex-

pediency of such legislation, where it is apparent that it tends toward the preservation of the public health or welfare evidently intended by the Legislature, but that body is not the sole arbiter of what constitutes proper exercise of the police power. For, as said in *Weaver* v. *Palmer Bros. Co.* (1926), 270 U. S. 402, 409, 46 Sup. Ct. 320, 79 L. Ed. 654: "Legislative determinations express or implied are entitled to great weight; but it is always open to interested parties to show that the legislature has transgressed the limits of its power." While the State, in the exercise of this power, may subject persons and property to all kinds of restraints and burdens, even to an encroachment upon the natural rights of the citizen, yet where it manifestly appears that the action of the Legislature is not supported by any reason and is purely arbitrary, thereby invading property rights of an individual, or unnecessarily and unreasonably restraining a lawful business or trade under the guise of police regulation, courts may look to the character and reasonableness of the limitation for the purpose of determining whether or not it reaches beyond the scope of necessary protection and prevention. In other words, "they will pass upon the question whether such act has a substantial relation to the police power." *People* v. *Weiner* (1915), 271 Ill. 74, 78, 110 N. E. 870, L. R. A. 1916C 775, Ann. Cas. 1917C 1065.

The Attorney-General has called our attention to the title of the original act (Acts 1913 p. 644) as being helpful in determining the intention of the Legislature. It is not claimed that the title of the act in question is insufficient or that the subject in the body of the act is not indicated by the title. Hence, the question: What beneficial purpose did the Legislature intend to accomplish? Giving the legislative language a reasonable and liberal view, the answer must be, to protect health and public welfare.

We are at present only concerned with the two provisions of the statute upon which the counts of the indictment are predicated. These statutory prohibitions are not expressly made to depend upon the use of insanitary or germ-infected materials. Provision (b) is the authority for Count 1 charging appellant with using "shoddy" made from old, worn and secondhand materials in the "making, remaking or renovating of mattresses," regardless of whether such materials, through a process of disinfection, sterilization and fumigation, may be sanitary and fit for use without danger to health or peril to the public. It is apparent that appellant was engaged in the production of articles for which there is a general public demand and in which the public generally is interested. His occupation was lawful, but of a character to justify proper regulation, a question for the Legislature. The statutory provision in question does not assume to regulate, but to prohibit. This the state, under its sovereign power, may do, providing, as applied to the instant case, the character of the shoddy used by appellant in conducting his business is injurious to the health, safety or public welfare. The general rule is, the State, in the exercise of its police power, cannot absolutely prohibit the use of a commercial commodity, when, by proper regulatory provisions, it may be rendered harmless to health, safety, public welfare, or individual third persons; or, in other words, the power to regulate a lawful business does not necessarily carry with it the power to destroy such business. *People* v. *Weiner, supra,* p. 80; *City of St. Louis* v. *Evraiff* (1923), 301 Mo. 231, 256 S. W. 489; *Railroad Co.* v. *Husen* (1877), 95 U. S. 465, 24 L. Ed. 527; *Valley Railways* v. *Harrisburg* (1924), 280 Pa. St. 385, 396, 124 Atl. 644; *State* v. *Taft* (1896), 118 N. C. 1190, 23 S. E. 970, 32 L. R. A. 122, 54 Am. St. 768; *Weaver* v. *Palmer Bros. Co., supra.*

From the foregoing observations it would seem to follow, as said in *Weaver* v. *Palmer Bros. Co., supra,* p. 410: "Invalidity may be shown by things which will be judicially noticed (*Quong Wing* v. *Kirkendall,* 223 U. S. 59, 64, 56 L. Ed. 350, 32 Sup. Ct. 192), or by facts established by evidence. The burden is on the attacking party to establish the invalidating facts." We are convinced that this case is one in which the claimed invalidity of the statute must be determined by the facts.

In substance, the evidence in this case shows that appellant was employed by the superintendent of the Indiana Girls' School to remake certain mattresses, and to renovate certain others. The ones to be renovated were cotton mattresses used by the girls. Those to be remade were hair mattresses used by the officers of that institution. These mattresses had been in use from two to four years. The materials in this instance were sorted, the worst taken out. The cotton used was run through a machine. The hair mattresses contained various kinds of animal hair. They were not inspected for a year or more after they were made, and whether new hair or old was used when the mattresses were manufactured, the inspector was unable to say. Appellant obtained materials for the manufacture of mattresses generally from the city hospital and other sources, but no witness was able to affirm that any of the material used in overhauling or renovating the mattresses for the Girls' School had been used by any sick patient or had been subjected to hospital use, nor was there evidence from which the jury would be justified in finding that the shoddy used by appellant was insanitary or unhealthy. The evidence did justify the jury in finding that old and used material was made into shoddy from which appellant fabricated mattresses.

This evidence will not warrant us in declaring the statute void on the ground that it is inhibited by the personal-liberty clause or the equal-privilege and immunity section of our Constitution. It was an affirmative act of the state to restrain a lawful business from the exercise of abuses which would endanger health and public welfare. The statute thus construed falls short of being arbitrary or of unnecessarily invading property rights, or unreasonably restraining a lawful business. It being a reasonable exercise by the State of her police power, and applying alike to all similarly situated, neither of the constitutional provisions relied on by appellant is violated. *Ayres* v. *State* (1912), 178 Ind. 453, 458, 99 N. E. 730, Ann. Cas. 1915C 549, and cases there cited; *Chicago, etc., R. Co.* v. *Anderson* (1914), 182 Ind. 140, 105 N. E. 49, Ann. Cas. 1917A 182.

Turning to the question as to whether the indictment charges a public offense, we have concluded that neither count states facts sufficient to withstand a motion to quash. We are not unmindful of the general rule, that when a statute defines the offense and states specifically what acts shall constitute it, a charge substantially in the language of the statute will be upheld. *Shade* v. *State* (1925), 196 Ind. 665, 149 N. E. 348. But this rule originated and is generally applied to cases where there was no inherent right to do a thing or carry on a business. In the instant case, appellant was engaged in a lawful enterprise which he had a right to pursue, subject only to reasonable regulations by the state. The indictment at bar, Count 1, is in the language of that part of the statute designated "(b)," which, under the state's police power, we have construed to be a prohibition on the use of the materials therein specifically mentioned when they are shown to be insanitary, or, by allegations of fact, it appears that when they are trans-

formed into "shoddy" and used in mattresses, will endanger health. The evident object of provision (b) was the preservation of health by prohibiting the use of things likely to disseminate disease and nothing more. The police power does not extend to prevent arbitrarily the making of "shoddy" out of thoroughly sterilized and cleansed materials, even though the same should be old and second-hand. *Weaver* v. *Palmer Bros. Co., supra; People* v. *Weiner, supra.* Hence, we hold that, although Count 1 of the indictment, in charging the offense, followed the wording of provision (b) it is nevertheless bad for failure to allege facts showing the evil the Legislature sought to suppress.

In *Schmidt* v. *State* (1881), 78 Ind. 41, 47, it was said: "The accused has a right to have all the essential elements that enter into the offence charged in the indictment or information, so that he may know what he has to meet, whether those elements are expressed in terms in the statute, or enter into the offence by construction." See, also, *Vinnedge* v. *State* (1906), 167 Ind. 415, 79 N. E. 353; *American Rolling Mill Co.* v. *Hullinger* (1903), 161 Ind. 673, 678, 67 N. E. 986, 69 N. E. 460; *United States, etc., Paper Co.* v. *State* (1910), 174 Ind. 460, 91 N. E. 953; *State* v. *Rodgers* (1910), 175 Ind. 25, 93 N. E. 223.

Count 2 is in the language of subsection (2) of §8250, *supra,* which refers to subsection (1). Subsection (1) is subdivided into two specifications, (a) and (b). There is no attempt to plant this count upon specification (a), and the pleader having selected (b), the objections and reasoning applied to Count 1 can be successfully urged against Count 2.

Neither count in the indictment states facts sufficient to constitute a public offense.

Judgment reversed, with instructions to the trial court to quash both counts of the indictment.