STATE OF INDIANA *v.* CLASON.

[No. 26,905. Filed February 7, 1938. Rehearing denied March 10, 1938.]

*Omer S. Jackson,* Attorney-General, *Rexell A. Boyd,* Deputy Attorney-General and *Glenn A. Sawyer,* for the State.

*Guy W. Dausman,* and *Thompson & Rabb,* for appellee.

SHAKE, J.—The appellee, as defendant below, was charged by affidavit in one count with a misdemeanor for the violation of Chapter 278, Sec. 11, Acts of 1937, §3901-11 Baldwin's Ind. St. Service 1937. There was a motion to quash on the grounds (1) that the facts stated in the affidavit did not charge a public offense, and, (2) that the affidavit contained matter which, if true, constituted a legal justification of the offense charged. The trial court sustained the motion to quash and discharged the defendant, with a finding that the statute is unconstitutional. It was not claimed that the charge was otherwise insufficient, and the State has appealed.

The affidavit alleges in substance that on a date named therein the defendant unlawfully hauled and transported over a certain public highway in Elkhart County, Indiana, to a disposal plant located in the State of Illinois, a dead horse, which had not been slaughtered and

intended for human food, the defendant not being licensed so to do, as required by the above act.

The act upon which the prosecution was based is lengthy and we deem it sufficient for the purpose of this appeal to summarize its pertinent provisions. The title discloses that its purpose is to "control animal diseases and to regulate the transportation and disposal of the bodies of dead animals." The first section recites that it is an exercise of the police power of the State to prevent the spread of animal diseases, to conserve the public health, and to protect the citizens against dangers and nuisances. The act has no application to persons slaughtering or butchering animals for human consumption, nor to the transportation of the products thereof. The disposal of the bodies of dead fowl, birds, fish, reptiles and of small animals, such as dogs and cats and small game, are likewise exempted.

Standards for disposal plants are set up and frequent inspections thereof provided for. Annual licenses are required for these establishments and the cost of administering the act is paid out of the proceeds thereof. Only holders of licenses may operate vehicles for the transportation of dead animals on the public highways of the State, and there are express requirements as to the equipment of these vehicles. The beds in which dead animals are hauled shall be tight, so as to avoid drippings and seepings, shall be of sufficient size and depth to hide the contents thereof from the view of other persons using the highways, and such vehicles are required to be thoroughly cleansed and disinfected after use. The act authorizes the owner of any dead animal to bury or burn the same on his own premises, if they are without the corporate limits of any city or town; such owner may also salvage the skin of any dead animal and transport it to market, if such animal shall not have died of a contagious disease.

Appellee's brief has been of no aid to the court in the consideration of this case. It contains no helpful propositions, and no points and authorities, beyond the bare assertion that the act upon which the prosecution is based violates Article I, Section 8, Clause 3, of the Constitution of the United States. This is the so-called interstate commerce clause, and it provides: "The congress shall have power to . . . regulate commerce . . . among the several states."

While the laws of the state must yield to Acts of Congress passed in execution of the powers conferred upon it by the Constitution, the mere grant to ■ Congress of the power to regulate commerce among the states does not, of itself and without legislation by Congress, impair the authority of the states to establish such reasonable regulations as are appropriate for the protection of the health, the lives and the safety of their people. *New York, etc., R. Co.* v. *New York* (1897), 165 U. S. 628, 631, 17 S. Ct. 418, 41 L. Ed. 853.

When the local police regulation has real relation to the suitable protection of the people of the state, and is reasonable in its requirements, it is not invalid ■ because it may incidentally affect interstate commerce, provided it does not conflict with legislation enacted by Congress pursuant to its constitutional authority. *Savage* v. *Jones* (1912), 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182, 1185; *Austin* v. *Tennessee* (1900), 179 U. S. 343, 349, 21 S. Ct. 132, 45 L. Ed. 224, affirming (1898), 101 Tenn. 563, 48 S. W. 305, 70 Am. St. Rep. 703, 50 L. R. A. 478.

Under the exercise of the police power it has been held that a state may adopt laws: Prohibiting the shipment out of the state of citrus fruits which are unripe or otherwise unfit for consumption, *Sligh* v. *Kirkwood* (1915), 237 U. S. 52, 35 S. Ct. 501, 59 L. Ed. 835;

prohibiting the slaughtering of calves unless in healthy condition and at least four weeks old, and prohibiting the shipment of veal from such animals to or from any part of the state, *People* v. *Bishopp* (1904), 44 Misc. Rep. 12, 89 N. Y. S. 709; prohibiting healthy persons, either from within or without the State, entering an area infected with a contagious disease. *Compagnie Francaise* v. *Louisiana State Board of Health* (1902), 186 U. S. 380, 385, 22 S. Ct. 811, 46 L. Ed. 1209; prohibiting the disinterment or exhuming of the body of a deceased person, even when it is intended to transport the remains of an alien to his own country for final sepulture, without first obtaining a permit from the proper officer, *In re Wong Yung Quy* (C. C. Cal 1880), 2 Fed. 624.

It has not been pointed out to us wherein the subject-matter of the act before us conflicts with any federal legislation, and we know of none. We find ▪ ▪ nothing in its purposes or provisions repugnant to the settled principles of constitutional law. The wisdom of the law was for the determination of the legislative branch of the government and we think the objectives being for the protection of the public health, the health of domestic animals of great economic value, and the prevention of nuisances on the highways of the State were all within the purview of the powers of the General Assembly. We are obliged to indulge the presumption that the act is constitutional unless and until the contrary is made to appear. *Weisenberger* v. *State* (1931), 202 Ind. 424, 175 N. E. 238; *Levy* v. *State* (1903), 161 Ind. 251, 68 N. E. 172; *Overshiner* v. *State* (1901), 156 Ind. 187, 59 N. E. 468. We therefore hold the act valid and that the affidavit charged a public offense.

Reversed, with directions to overrule appellee's motion to quash and to require him to plead to the charge.

## ON PETITION FOR REHEARING.

SHAKE, J.—In our original opinion we said: "Appellee's brief has been of no aid to the court in the consideration of this case. It contains no helpful propositions, and no points and authorities, beyond the bare assertion that the act upon which the prosecution is based violates Article I, Section 8, Clause 3, of the Constitution of the United States." The appellee, through other counsel, has now presented a petition for rehearing, supported by an able and exhaustive brief. For this reason we deem it proper to express our views with reference to the propositions therein contained.

We find no objection to the statement of general principles contained in appellee's petition, to the effect that in passing upon the constitutionality of an act, its purpose must be determined from its natural and reasonable effect; that the legislative declaration of purpose is not binding, and that whether a regulation of a useful business is a valid exercise of police power is a judicial question.

The appellee has cited a number of cases from this court and from the federal courts to sustain his claim that the statute under consideration constitutes an unauthorized interference with interstate commerce. One of the clearest and most comprehensive statements that we have seen with reference to the authority of the states to legislate upon such subjects, is to be found in the case of *Oregon-Washington Railroad & Navigation Co.* v. *State of Washington* (1926), 270 U. S. 87, 101, 46 S. Ct. 279. In that case Mr. Chief Justice Taft said: "In the relation of the States to the regulation of interstate commerce by Congress there are two fields. There is one in which the State can not interfere at all, even in the silence of Congress. In the other . . . the State may exercise its police power until Congress has by affirmative legislation occupied the field by regulat-

ing interstate commerce and so necessarily has excluded state action." In the same case the distinguished jurist further says (p. 93) : "In the absence of any action taken by Congress on the subject matter, it is well settled that a State in the exercise of its police power may establish quarantines against human beings or animals or plants, the coming in of which may expose the inhabitants or the stock or the trees, plants or growing crops to disease, injury or destruction thereby, and this in spite of the fact that such quarantines necessarily affect interstate commerce."

If a state may, in the exercise of its inherent police power, adopt quarantine statutes prohibiting the importation of dangerous or noxious articles or objects, we think it may likewise, inferentially, license and regulate the use of its highways to accomplish the same ends, even though such regulation may incidentally affect interstate commerce. *Kidd* v. *Pearson* (1880), 128 U. S. 1, 9 S. Ct. 6.

It seems to us that the proper disposition of this appeal is to be found in the answers to these questions: (1) Is Chapter 278, Acts of 1937, a reasonable quarantine regulation within the police power of the State which incidentally affects interstate commerce, or (2) is it a direct interference with interstate commerce, under the guise of an exercise of the police power?

We cannot, in the interest of space and time, review all of the authorities cited by the appellee, but shall point out wherein several of them are not applicable to the situation with which we are here dealing. The cases reviewed are typical of the others relied upon.

In *The State, ex rel. Corwin* v. *The Indiana, etc. Mining Co.* (1889), 120 Ind. 575, 22 N. E. 778, this court considered an act prohibiting the transportation of natural gas from any point within this State to any point or place without the State. The court held that

the interference with interstate commerce, under the circumstances shown, was direct and not merely incidental. In the opinion Chief Justice Elliott said (p. 580) : "The act does not assume to provide for the safety, health, or comfort of the citizens . . . . It is not a regulation of the mode of procuring, transporting, or using natural gas designed to secure the health, safety, or comfort of the citizens of Indiana. . . . The act can not be taken out of the operation of the Federal decisions upon the theory that it is a valid exercise of the police power resident in every sovereign state, for the theory is without foundation."

In *Jamieson* v. *The Indiana Natural Gas & Oil Co. et al.* (1891), 128 Ind. 555, 28 N. E. 76, this court had under consideration another natural gas statute which prohibited the transportation of gas within or without the State under artificial pressure exceeding 300 pounds per square inch. In holding the statute valid, the court remarked (p. 577) : "We do not assume that a State can legislate for the regulation of interstate commerce—that power is undoubtedly Federal—nor do we assume that under the guise of exercising the police power there may be a regulation of commerce between the States, but we do assume that it is settled by the decisions that State legislation is not invalid simply because it operates upon or affects commercial commodities or instrumentalities. So long as there is nothing more than an exercise of the police power, and no regulation of commerce, there is nothing more than the exercise of a State power."

In *Manufacturers Gas, etc., Co.* v. *The Indiana Natural Gas, etc., Co.* (1900), 155 Ind. 545, p..546, 58 N. E. 706, this court held another statute regulating the transportation of natural gas unconstitutional, and said: "Nothing done by the appellee is complained of, excepting only that it removes natural gas out of the State of Indiana. No ground for the exercise of the police power

of the State to prevent such removal is shown. Nothing, save the naked right to transport the gas beyond the limits of this State, is contested in this action. The only reason which can be urged in support of the restraint sought to be imposed upon the appellee is that the supply of natural gas being limited, and the article being one of great value and convenience, its use ought to be reserved for and enjoyed by the people of this State, to the exclusion of the inhabitants of any other State."

The appellee has also cited and quoted from *Foster-Fountain Packing Co. et al.* v. *Haydel* (1928), 278 U. S. 1, 49 S. Ct. 1, 73 L. Ed. 147. This is the so-called Louisiana "Shrimp case" and involved the constitutionality of a statute of that state which prohibited the shipment to other states of shrimp taken from the waters of Louisiana, unless they were processed in its factories. The act related directly to interstate commerce and the court said (p. 13) : "But by permitting its shrimp to be taken and all the products thereof to be shipped and sold in interstate commerce, the State necessarily releases its hold, and, as to the shrimp so taken, definitely terminates its control." The act in question was in no sense a health or quarantine measure, and we do not consider it as bearing upon the proposition before us.

In the case of *Vandalia Coal Co. et al.* v. *Special Coal & Food Comm. of Indiana et al.* (1920), 268 Fed. 572, the court held invalid an order of the Coal and Food Commission of Indiana requiring coal mines which had contracted to deliver their products outside the State to sell them within the State. This was held to be a direct burden on interstate commerce. But the court recognized the presumption that a statute is valid until the contrary is shown, and that a state is free to "meet and combat" wrongs that injure "the safety and welfare of the people."

We adhere to our former opinion that Chapter 278,

Acts of 1937, is for the protection of the public health, the health of domestic animals of great economic  value, and the prevention of nuisances on the highways. It does not directly or materially place a burden on interstate commerce, and the extent to which it affects commerce of that character may be said to be clearly incidental. We hold that until the Congress of the United States invades the field and legislates upon the subject, the act must be regarded as a proper and valid exercise of the inherent police power of the State of Indiana.

Rehearing denied.